# Exhibit A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
-------------------------------------------------------------------X
**JANE DOE I, JANE DOE II, JANE DOE III and JANE DOE IV,**

|  |  |
|---|---|
| **Plaintiffs,** | **Index No.: _____/20** |
|  |  |
| -against- | **Plaintiffs designate** **NEW YORK COUNTY** **as place of trial.** |
| **HARVEY WEINSTEIN, ROBERT WEINSTEIN, MIRAMAX HOLDING CORP., MIRAMAX FILM NY, LLC f/k/a MIRAMAX FILM CORP., THE WALT DISNEY COMPANY, DISNEY ENTERPRISES, INC. and DOE CORP. 1-10,** | **The basis of venue is** **CPLR § 503(a)** |
|  | **SUMMONS** |
| **Defendants.** | |

-------------------------------------------------------------------X

To the above-named Defendants:

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgement will be taken for the relief demanded in the complaint.

**A COPY OF THIS SUMMONS WAS FILED WITH THE CLERK OF THE COURT, NEW YORK COUNTY ON _____ IN COMPLIANCE WITH CPLR §§305(a) AND 306(a).**

Dated: May 28, 2020
        New York, New York

MERSON LAW, PLLC

By: *Jordan Merson*
    _____
    Jordan K. Merson
    Jesse R. Mautner
    Attorneys for Plaintiffs
    150 East 58th Street, 34th Floor
    New York, New York 10155
    Telephone: (212) 603-9100
    Facsimile: (347) 441-4171
    jmerson@mersonlaw.com
    jmautner@mersonlaw.com

Case 1:20-cv-05241   Document 1-1   Filed 07/08/20   Page 3 of 69

**HARVEY WEINSTEIN**
50 West 70th Street, #2
New York, NY 10023

375 Greenwich Street, Floor 3
New York, NY 10013

**ROBERT WEINSTEIN**
1745 Broadway, Floor 18
New York, NY 10019

**MIRAMAX HOLDING CORP.**
500 South Buena Vista Street
Burbank, CA 91521
c/o Corporation Services Company

2710 Gateway Oaks Drive, Ste. 150N
Sacramento, CA 95833
c/o Corporation Services Company

**MIRAMAX FILM NY, LLC**
1901 Avenue of the Stars
Los Angeles, CA 90067
c/o Corporation Services Company

80 State Street
Albany, NY 12207
c/o Corporation Services Company

**THE WALT DISNEY COMPANY**
500 South Buena Vista Street
Burbank, CA 91521
c/o Chakira H. Gavazzi

251 Little Falls Drive
Wilmington, DE 19808
c/o Corporation Services Company

80 State Street
Albany, NY 12207
c/o Corporation Services Company

**DISNEY ENTERPRISES, INC.**
500 South Buena Vista Street
Burbank, CA 91521
c/o Chakira H. Gavazzi

Case 1:20-cv-05241   Document 1-1   Filed 07/08/20   Page 4 of 69

251 Little Falls Drive
Wilmington, DE 19808
c/o Corporation Services Company

80 State Street
Albany, NY 12207
c/o Corporation Services Company

**DOE CORP. 1-10**

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
-----------------------------------------------------------------------X
**JANE DOE I, JANE DOE II, JANE DOE III and JANE DOE IV,**

          **Plaintiffs,**

      **-against-**

**HARVEY WEINSTEIN, ROBERT WEINSTEIN, MIRAMAX HOLDING CORP., MIRAMAX FILM NY, LLC f/k/a MIRAMAX FILM CORP., THE WALT DISNEY COMPANY, DISNEY ENTERPRISES, INC. and DOE CORP. 1-10,**

          **Defendants.**
-----------------------------------------------------------------------X

**Index No.: _____/20**

**VERIFIED COMPLAINT**

**Jury Trial Demanded**

   Plaintiffs Jane Doe I, Jane Doe II, Jane Doe III and Jane Doe IV (collectively "Plaintiffs")[1] by their counsel, Merson Law, PLLC, for their complaint against Harvey Weinstein, Robert Weinstein, Miramax Holding Corp., Miramax Film NY, LLC f/k/a Miramax Film Corp. (together with Miramax Holding Corp., "Miramax"), The Walt Disney Company, Disney Enterprises, Inc. (together with The Walt Disney Company, "Disney") and Doe Corp. 1-10 (collectively "Defendants"), allege as follows:

### PRELIMINARY STATEMENT

   1.   Over the course of several decades, the now convicted serial sex offender Harvey Weinstein was able to use his power and influence in the entertainment industry, including, but not limited to, his ownership and control of Miramax, affiliation with Disney and ownership and control of Doe Corp. 1-10 and the now bankrupt The Weinstein Company Holdings, LLC ("TWC"), to entice and intimidate unsuspecting females, including Plaintiffs, into compromising

---

[1] Plaintiffs use pseudonyms because they are victims of sex crimes pursuant to N.Y. Civ. Rights § 50-b and other statutory and common law principles.

situations where he could use his power, threats and when that failed, physical force, to sexually abuse, assault, batter and falsely imprison women and young girls.

2.      Under the pretense of helping advance Plaintiffs' careers, Harvey Weinstein was able to successfully isolate Plaintiffs from their friends and peers in order to sexually harass, falsely imprison and sexually assault and/or batter them (collectively "sexually abuse").

3.      Due to the fact that Plaintiffs were all either already involved in, or wanted to become involved in, the entertainment industry, and were also aware that Harvey Weinstein was well-known and well-connected within the industry, something that he used to his advantage and often used to threaten his victims, including Plaintiffs, at all times herein mentioned, Plaintiffs were acting under extreme duress due to the credible threat of being blacklisted, harmed and/or personally attacked by Harvey Weinstein and other major players in the industry, including, but not limited to, his brother, Robert Weinstein, Miramax, Disney, Doe Corp. 1-10 and TWC, were they to refuse his advances and/or report his sexual abuse after the fact.

4.      On information and belief, over time, Harvey Weinstein used numerous individuals within these companies and his inner-circle to not only facilitate and conceal his pattern of unwanted sexual abuse, but also prevent such abuse from becoming known within the industry and world at-large. As Manhattan District Attorney Cyrus Vance Jr. remarked after Harvey Weinstein's sentencing on March 11, 2020 for sexually assaulting Miriam Haley in 2006 and raping Jessica Mann in 2013:

> Harvey Weinstein deployed nothing less than an army of spies to keep them silent. But they refused to be silent, and they were heard. Their words took down a predator and put him behind bars and gave hope to survivors of sexual violence all across the world.[2]

---

[2] https://www.manhattanda.org/d-a-vance-harvey-weinstein-sentenced-to-23-years-in-prison

5.      As Harvey Weinstein's sexual abuse of young girls and women continued for decades on end and became harder to conceal, the number of participants and facilitators continued to grow. The list includes, but is not limited to, on information and belief, Robert Weinstein, Miramax, Disney, Doe Corp. 1-10 and TWC; in fact, it was not until a groundbreaking report published by Jodi Kantor and Megan Twohey in The New York Times in October of 2017 that TWC's all-male board was forced to resign and Harvey Weinstein was fired from the company the Weinstein brothers had started twelve years prior.[3] As previously mentioned, because Harvey Weinstein was only able to get Plaintiffs into the compromising situations they found themselves in under the guise of his ownership and control of Miramax, affiliation with Disney and ownership and control of Doe Corp. 1-10 and TWC, there is no doubt that Harvey Weinstein was acting within the scope of his employment while sexually abusing Plaintiffs and, as evidenced by his repeated avoidance of discipline, had his behavior ratified or concealed by higher-ups, managers and principals throughout Miramax, Disney, Doe Corp. 1-10 and TWC.

6.      As if the sexual abuse perpetrated on Plaintiffs was not bad enough, after it was over, on information and belief, Harvey Weinstein would then utilize his "Army of Spies" to harass, threaten, extort and mislead Plaintiffs in order to hinder and prevent their disclosure of his sexual abuse and avoid prosecution for the same.[4]

7.      Indeed, as psychology expert Dr. Peter Hughes noted:

"Everybody knew about Harvey Weinstein. Everybody knew about his behavior, yet nobody did anything. That made it almost impossible for anybody to come forward and make any accusation.

The length[s] to which Harvey Weinstein would go, and his access, his ability to go these lengths to protect his name, and to protect himself from any accusation, was quite extraordinary ... [F]or instance, he hired Blackcube, ex-Israeli intelligence officers, to

---

[3] https://www.nytimes.com/2017/10/05/us/harvey-weinstein-harassment-allegations.html
[4] https://www.newyorker.com/news/news-desk/harvey-weinsteins-army-of-spies/amp

find out who might be making allegations against him, and to shut them down ... So ... when people say why didn't people speak up ... not only are you dealing with Harvey Weinstein, not only are your risking your career, not only are you going to be blacklisted, not only might you be countersued for false allegations, you are also going to face the might of all sorts of the murkier world of intelligence, of security, that are set up and designed to protect these men, and men like Harvey Weinstein use that veil, and use that screen of protection, and it makes them believe to two things: one, that they'll never ever, ever get caught; and, secondly, if they do caught, if somebody dares to accuse them, they will crush the accuser like a fly.[5]

8.     Hughes also went on to detail one of the "great myths" about Harvey Weinstein,

and why his accusers, with allegations spanning several decades, did not come forward sooner:

"[I]magine this scenario ... you are a woman in a lower state of power relative to one of the most powerful men in the entertainment industry, one of the most powerful in the United States. This man knows everybody: the top lawyers, top politicians, presidents, every film director, every producer, every actor, everybody acknowledges and bows down to Harvey Weinstein. You, having been touched inappropriately in a vulnerable position with nowhere near his economic power, his social power, his political power, what are you [going to] do? You're [going to] think 'that wasn't right,' and more often than not, you may even turn [a]round and think 'was it something I did?' ... [A]nd the answer to that is an absolute and categorical no. These women did not do anything to encourage Harvey Weinstein to engage with them against their consent. And they have not only had to live with the abuse, they have had to live with the feeling of powerlessness about having been abused and also feeling ashamed of it while Harvey Weinstein just goes on and on and on and keeps doing it and doing it and doing it."[6]

9.     Accordingly, Plaintiffs seek that Harvey Weinstein be held liable for sexually

abusing them, and Robert Weinstein, Miramax, Disney and Doe Corp. 1-10 be held liable for

their negligence and other unlawful conduct in allowing the abuse to happen under New York

law. Defendants' conduct caused insurmountable damages to Plaintiffs, including derailing their

---

[5] Jordan Hill, The Harvey Weinstein Scandal (2018)
[6] Id.

once promising futures due to the personal injuries and emotional distress they endured as a result of being sexually abused by Weinstein for which Defendants must now be held responsible for.

**PARTIES**

10.     Plaintiffs, victims of sexual abuse, have been identified by pseudonyms herein because these matters are of a highly sensitive and personal nature, and public disclosure of their identities poses the risk harming their personal and professional lives in addition to subjecting them to further humiliation, shame, and emotional distress. In addition, they were afraid and fearful to come forward until now, as they were threatened with harm if they did so.

11.     Plaintiff Jane Doe I is a 70-year-old woman. She is a citizen of the United States and resident of Ecuador.

12.     Plaintiff Jane Doe II is a 43-year-old woman. She is a citizen of the United States and resident of Tennessee.

13.     Plaintiff Jane Doe III is a 38-year-old woman. She is a citizen of the United States and resident of New York.

14.     Plaintiff Jane Doe IV is a 35-year-old woman. She is a citizen and resident of Hungary.

15.     Prior to being incarcerated, Harvey Weinstein was, on information and belief, a citizen of the United States and resident of New York. In the late 1970s, Harvey Weinstein, along with his brother and co-Defendant Robert, created the independent film distribution company known as Miramax which was ultimately bought by Disney in 1993. The brothers remained at Miramax, under the Disney umbrella, until September 2005 when they left to start TWC. As such, on information and belief, at all relevant times herein mentioned, Harvey Weinstein was either reporting to executives at Miramax or Disney who had the ability to set his pay, control

his work conditions, discipline and ultimately, fire him for his abhorrent conduct as mentioned herein.

16.    Defendant Robert Weinstein is, on information and belief, a citizen of the United States and resident of New York. As more fully set forth below, he has known about his brother's repeated predatory sexual conduct toward women since at least their initial days at Miramax.

17.    Defendant Miramax Holding Corp. is a Delaware Corporation with its principal place of business located in Burbank, California. On information and belief, Miramax Holding Corp. is the successor entity to one of the Miramax entities that employed Harvey Weinstein or for which Harvey Weinstein acted as an officer or director.

18.    Miramax Film NY, LLC f/k/a Miramax Film Corp. is a New York corporation with its principal place of business located in Los Angeles, California. On information and belief, in 2010, Miramax Film NY, LLC merged with and assumed all of the liabilities of Miramax Film Corp., one of the Miramax entities that employed Harvey Weinstein or for which Harvey Weinstein acted as an officer or director.

19.    Defendant The Walt Disney Company is a Delaware corporation with its principal place of business located in Burbank, California. On information and belief, Disney entered into two employment agreements with Harvey Weinstein and Miramax; the first ran from 1993 to 1995 and the second ran from 1995 to 1999.[7] Accordingly, on information and belief, Disney exercised oversight and control over Harvey Weinstein.

20.    Defendant Disney Enterprises, Inc. ("Disney Enterprises") is a Delaware corporation with its principal place of business located in Burbank, California. On information and belief, Disney Enterprises entered into an employment agreement with Harvey Weinstein

[7] https://www.canlii.org/en/on/onsc/doc/2018/2018onsc2122/2018onsc2122.html

and Miramax in 1999 that ran to 2005 wherein it was agreed that Disney Enterprises and Miramax would be held jointly and several liable.8

21.     Defendant Doe Corp. 1-10 are the successor and related entities of Miramax and Disney that employed Harvey Weinstein during the relevant time period.

## JURISDICTION AND VENUE

22.     This Court has jurisdiction over this matter pursuant to New York Civil Practice Laws and Rules ("CPLR") § 301.

23.     Venue is proper in New York County pursuant to CPLR § 503(a) because it is the County in which at least one of the parties resides and where a substantial part of the events giving rise to the claims herein occurred.

## FACTS

### Harvey Weinstein's History of Sexual Abuse

24.     Prior to breaking into the film industry, The Weinstein Brothers were based out of Buffalo, New York. There, Harvey ran a concert promotion company named Harvey and Corky Productions, and Robert, having recently dropped out of college, worked as a promoter for movie festivals in a nearby theatre that Harvey owned.9

25.     It was during period of time that the first allegations of sexual abuse were levied against Harvey. First, Cynthia Burr, an actress who at the time was in her early twenties, described being confronted in a hallway of a building in New York and being forced to perform oral sex on the industry "up-and-comer".10

---

8 Id.

9 https://www.vanityfair.com/news/2003/04/max-weinstein-200304

10 https://www.usatoday.com/story/life/people/2017/10/30/harvey-weinstein-scandal-donna-karan-still-apologizing-asking-trouble-comments/812621001/

26.     It was also during this same period of time that Hope Exiner d'Amore, one of Weinstein's employees at Harvey and Corky Productions, alleged that while on business trip to New York, Weinstein first surprised her by telling her that the two would be sharing a room before, in the middle of the night, forcibly performing oral sex and intercourse on her.[11]

27.     However, based on all accounts, Weinstein was able to keep these, and possibly several other incidents, concealed from the public, and in the late 1970s, having earned enough money from his concert promotion business, founded the small independent film distribution company known as Miramax.[12]

28.     Shortly thereafter, Harvey and Robert Weinstein's reputations in the entertainment industry grew exponentially as Miramax produced and distributed several films that achieved both critical attention and commercial success.[13] However, as set forth in a USA Today article entitled "Harvey Weinstein: Timeline of Hollywood success and hidden abuse," all the while, Harvey's sexual abuse of young women continued to run rampant.[14]

29.     In 1980, Paula Wachowiak recalls Weinstein exposing himself to her when she was a twenty-four-year-old production assistant on his first film, "The Burning." After leaving the room in tears, Weinstein later asked her if it was the "highlight of [her] internship."[15]

30.     Then in 1984, the same year he abused Plaintiff Jane Doe I and two years after the success of Miramax's "The Secret Policeman's Other Ball," Tomi-Ann Roberts, a twenty-year-old college student, remembers when Weinstein, a customer at the restaurant she was waiting tables at, took to her, sent her a script and later asked her to meet with him to discuss the

---

[11] Id.
[12] https://www.vanityfair.com/news/2003/04/max-weinstein-200304
[13] Id.
[14] https://www.usatoday.com/pages/interactives/news/harvery-weinstein-timeline/
[15] https://www.usatoday.com/story/life/people/2017/10/15/harvey-weinstein-news-london-police-investigate-new-assault-claims-against-him/765978001/

film. However, as soon as she arrived, Roberts saw a naked Weinstein sitting in a bathtub demanding she get naked too because the character he wanted her to play might be topless in the film.[16] This ploy, the setting up of meetings with young women under the guise of doing business with them, is something that Weinstein repeated time and again throughout the years.

31.     Indeed, five years later in 1989, actress Heather Kerr recollects Weinstein exposing himself to her while discussing how he could help her acting career. Kerr stated that after Weinstein got her alone in his office, he told her that "if he was going to introduce [her] around town to directors and producers, he needed to know if [she] was any 'good'" and "that this was how things worked in Hollywood and that all of the actresses that had made it, had made it this way." Kerr went on saying that, "frozen in fear … [t]he next thing I knew, he had unzipped his fly and pulled out his penis … He then grabbed my hand and pulled me towards him and forced my hand onto his penis and held it there."[17]

32.     Notably, in 1990, for the first time on record, Weinstein settled with one of his victims, a young assistant from Miramax's London office.[18]

33.     This settlement did nothing to deter Weinstein from continuing with his abhorrent behavior as actress Annabella Sciorra recounts that in 1991, Weinstein "violently" raped her after filming "The Night We Never Met" in addition to attempted to perform oral sex on her.[19] Sciorra also noted that Weinstein repeatedly sexually harassed her several more times over the next several years.[20]

---

[16] https://www.usatoday.com/pages/interactives/news/harvery-weinstein-timeline/
[17] https://www.usatoday.com/story/life/people/2017/10/20/jill-scotts-harvey-weinstein-story-he-said-who-told-you-get-pregnant/783492001/
[18] https://www.usatoday.com/pages/interactives/news/harvery-weinstein-timeline/
[19] https://www.usatoday.com/story/life/people/2017/10/27/harvey-weinstein-scandal-ashley-judd-says-tipping-point-sexual-harassment-here/806013001/
[20] Id.

34. However, those close to him, such as his brother, Robert Weinstein, Miramax, Disney and/or their principals, managers and agents were able to keep these propensities unknown to the industry at-large and in 1993, Disney purchased Miramax from Harvey and Robert Weinstein in a deal valued between $60 to $80 million.[21]

35. Weinstein also repeatedly displayed a pattern of conduct of falsely imprisoning his victims. As actress Katherine Kendall described regarding his attack of her in 1993, "[h]e literally chased me ... He wouldn't let me pass him to get to the door."[22]

36. Similarly, in 1996, after refusing to give Weinstein a massage, Judith Godreche, a twenty-four-year-old French actress, recalls him cornering her in a hotel room, "pressing against her and pulling off her sweater."[23]

37. A year later, in 1997, Weinstein once again settled with one of his victims, actress Rose McGowan, over an incident that took place in a hotel room.[24] However, this settlement clearly did not phase Weinstein as just a few months later, he was back at it, forcibly performing oral sex on twenty-one-year-old Italian actress Asia Argento.[25]

38. Perhaps due to this tremendous success and acquisition of fame and fortune, and as more fully set forth below, Weinstein's propensities continued to accelerate. Using the power, influence and resources of his position at Miramax, which was further cemented by the Disney purchase, Weinstein continued to meet privately with women, including Plaintiffs, by using their desire to break into the entertainment as bait to lure them into his twisted world.

[21] https://www.newstatesman.com/node/160714
[22] https://www.usatoday.com/pages/interactives/news/harvery-weinstein-timeline/
[23] Id.
[24] https://www.nytimes.com/2017/10/05/us/harvey-weinstein-harassment-allegations.html?_r=1
[25] https://www.newyorker.com/news/news-desk/from-aggressive-overtures-to-sexual-assault-harvey-weinsteins-accusers-tell-their-stories

### Harvey Weinstein's Sexual Abuse of Jane Doe I

39.     In or about 1984 when Plaintiff was approximately thirty-four years old, Harvey Weinstein falsely imprisoned, sexually assaulted and sexually battered her.

40.     At that time, Plaintiff, who was interested in breaking through in the film industry, accompanied a friend of hers, who happened to work with Harvey Weinstein in foreign sales, to the Cannes Film Festival.

41.     One night during the festival, after dinner, under the guise of discussing professional opportunities like helping secure funding for the documentary she was working on, Weinstein took Plaintiff back to the Hotel Barrière Le Majestic Cannes, where they were both staying, and falsely imprisoned, sexually assaulted and sexually battered her. Plaintiff, thinking that they were going back to her friend's suite, was actually led by Weinstein back to one of his suites at which time he pinned her against the suite's front door, jammed his tongue into her mouth and fondled her breasts and then vagina.

42.     Eventually, and fortunately, when Weinstein let her go to open the door, he threatened her, and Plaintiff broke free and sprinted to her friend's suite and informed him of what Weinstein had just done to her. However, after telling her friend, one of Weinstein's colleagues, about what had just happened to her, he reiterated that they should keep it between them, otherwise Plaintiff would be blackballed from the industry and her career would be ruined like several women before her.

43.     As a result of the aforementioned intimidation, false imprisonment, sexual assault and sexual battery, Plaintiff suffered, and continues to suffer from severe and serious injuries, including, but not limited to, severe emotional distress and physical manifestations thereof.

Case 1:20-cv-05241   Document 1-1   Filed 07/08/20   Page 16 of 69

44.     Plaintiff's claim is also timely brought pursuant to both CPLR § 215(8)(a) and the doctrine of equitable estoppel.

45.     First, CPLR § 215(8)(a) provides that "[w]henever it is shown that a criminal action against the same defendant has been commenced with respect to the event or occurrence from which a claim governed by this section arises [i.e. assault, batter and false imprisonment], the plaintiff shall have at least one year from the termination of the criminal action as defined in section 1.20 of the criminal procedure law in which to commence the civil action."

46.     As is well established, the criminal action against Harvey Weinstein for, *inter alia*, rape in the first degree as defined in section 130.35 of the penal law and criminal sexual act in the first degree as defined in section 130.50 of the penal law, which include the lesser offenses of sexual assault and battery, was terminated on March 11, 2020 when he was sentenced to twenty-three-years in prison.

47.     Accordingly, because Plaintiff was assaulted, battered and falsely imprisoned by Harvey Weinstein when he forcibly touched her sexual and other intimate body parts for the purpose of degrading and sexually abusing her, and for the purpose of gratifying his sexual desire, Plaintiff's claim is timely brought pursuant to CPLR § 215(8)(a).

48.     Second, Defendants are barred from asserting the affirmative defense of the statute of limitations having run as it pertains to Plaintiff's claim under the doctrine of equitable estoppel.

49.     As more fully set forth herein, equitable estoppel is applicable because Plaintiff has been estopped from previously asserting her claim due to Defendants and/or their agents, servants and/or employees' affirmative wrongdoing being the sole reason for the delay between the accrual of her cause of action and the commencement of this proceeding.

Case 1:20-cv-05241   Document 1-1   Filed 07/08/20   Page 17 of 69

50.     Indeed, as demonstrated herein and as referenced by District Attorney Vance, Defendants "deployed nothing less than an army of spies to keep [Weinstein's victims] silent." [26] Accordingly, there can be no doubt that Defendants' conduct amounted to fraud, misrepresentation, threat, or deception which, prior to Harvey Weinstein's arrest and conviction, caused Plaintiff to refrain from filing her claim.

51.     Indeed, as has been widely reported, if a young girl or woman refused to give in to Harvey Weinstein's advances and/or speak out against what he had done to them, "Weinstein and his associates used nondisclosure agreements, payoffs, and legal threats to suppress their accounts."[27] This includes a report that shortly before The New York Times and The New Yorker finally revealed the decades-long pattern of harassment, Weinstein and his legal team began calling his accusers and threatening them should they continue to talk to media publications; they also threatened to sue The New York Times and other outlets for their reporting on Weinstein's predatory past.[28]

52.     This type of behavior, which was known throughout the industry, actually and reasonably placed Plaintiff under duress and fear, and caused her to abstain from asserting her legal rights in response to Weinstein sexually abusing her and is the exact type of behavior the doctrine of equitable estoppel is set up to alleviate.  Plaintiff was too afraid, and unable, to come forward until now.

53.     As such, the doctrine of equitable estoppel is appropriate where, as here, it would be unjust to allow a defendant to assert a statute of limitations defense.

---

[26] https://www.manhattanda.org/d-a-vance-harvey-weinstein-sentenced-to-23-years-in-prison
[27] https://www.newyorker.com/news/news-desk/from-aggressive-overtures-to-sexual-assaultharvey-weinsteins-accusers-tell-their-stories
[28] Id.

## Harvey Weinstein's Sexual Abuse of Jane Doe II

54.     In or about 1994 when Plaintiff was approximately seventeen years old, Harvey Weinstein falsely imprisoned, sexually assaulted, sexually battered and raped her.

55.     Plaintiff, who was looking to break into the entertainment industry, was recruited and enticed by one of Weinstein's associates to meet with him under the guise of doing business.

56.     A few days later, the "meeting" was arranged, and Plaintiff was picked up by Weinstein's associate and taken to Weinstein's hotel room.

57.     Upon entering the room, Plaintiff noticed that Weinstein was already nearly naked, but because she was on her own in a hotel several miles from her home, with no way of getting home without Weinstein's associate taking her there, she decided to keep her cool and try to get through the "meeting" as quickly as possible. The two then had a brief conversation wherein Weinstein feigned interest in Plaintiff's desire to work in the entertainment industry, and shortly thereafter, the much larger and stronger Weinstein insisted that in order for him to get Plaintiff a job, she had to sexually gratify him. After initially rebuffing his demands, Weinstein cornered Plaintiff and forced her to remove her clothes and he climbed on top of her and demanded she perform oral sex on him.

58.     Once stimulated, Weinstein proceeded to rape Plaintiff until he ejaculated. Before leaving the room, Weinstein made Plaintiff give him her driver's license and told her that if she ever told anyone about what had just happened, he would not only make sure she never got to act in any films, but also have his associates track her down and physically harm her and her family. She was thus afraid to come forward until now.

59.     As a result of the aforementioned false imprisonment, sexual assault, sexual battery and rape, Plaintiff suffered, and continues to suffer from severe and serious injuries, including, but not limited to, severe emotional distress and physical manifestations thereof.

60.     In addition to Plaintiff's claim being timely under CPLR 215(8) and under the doctrine of equitable estoppel, Plaintiff's claim is also timely brought pursuant to CPLR § 214-g or The Child Victims Act ("CVA") which provides that a plaintiff, who was a child less than eighteen years of age when a defendant committed unto them an act in violation of New York Penal Law Article 130, shall have one year from August 14, 2019 to bring forth the previously time-barred claim against said defendant.

61.     Accordingly, because Harvey Weinstein engaged in sexual intercourse with Plaintiff by forcible compulsion in violation of New York Penal Law 130.35 (rape in the first degree) when she was less than eighteen years of age, her claim is timely brought pursuant to the CVA.

### Harvey Weinstein's Sexual Abuse of Jane Doe III

62.     In or about 2008 when Plaintiff was approximately twenty-six years old, Harvey Weinstein falsely imprisoned, sexually assaulted, sexually battered and raped her.

63.     Plaintiff was first scouted by Weinstein while the two were at Cipriani's in New York City, New York. Weinstein told her that he would put her in touch with powerful players who would help take her career to the next level. Before exiting the restaurant, Weinstein took down Plaintiff's phone number.

64.     A few days later, Plaintiff received a call from one of Weinstein's secretaries who set up a "business" meeting for the two at an apartment in Soho.

65.     However, shortly after arriving at the apartment, Weinstein quickly steered the conversation away from business and into a sexual nature.

66.     After she declined his initial advances, Weinstein threatened that he was not going to let Plaintiff leave the apartment unless she did what he wanted, and Weinstein raped her. After he ejaculated, Weinstein threatened that if Plaintiff told anyone about what had happened, or took legal action, he would ruin her career and come after her.

67.     As a result of the aforementioned false imprisonment, sexual assault, sexual battery and rape, Plaintiff suffered, and continues to suffer from severe and serious injuries, including, but not limited to, severe emotional distress and physical manifestations thereof.

68.     Plaintiff's claim is also timely brought pursuant to both CPLR § 215(8)(b) and the doctrine of equitable estoppel.

69.     First, CPLR § 215(8)(b) provides that "[w]henever it is shown that a criminal action against the same defendant has been commenced with respect to the event or occurrence from which a claim governed by this section arises, and such criminal action is for rape in the first degree as defined in section 130.35 of the penal law , or criminal sexual act in the first degree as defined in section 130.50 of the penal law... the plaintiff shall have at least five years from the termination of the criminal action as defined in section 1.20 of the criminal procedure law in which to commence the civil action..."

70.     As is well established, the criminal action against Harvey Weinstein for, *inter alia*, rape in the first degree as defined in section 130.35 of the penal law and criminal sexual act in the first degree as defined in section 130.50 of the penal law, was terminated on March 11, 2020 when he was sentenced to twenty-three-years in prison.

71.     Accordingly, because Harvey Weinstein engaged in sexual intercourse with her by forcible compulsion in violation of New York Penal Law 130.35 (rape in the first degree), her claim is timely brought pursuant to CPLR § 215(8)(a).

72.     Second, Defendants should be barred from asserting expiration of the statute of limitations as an affirmative defense as it pertains to Plaintiff Jane Doe III's claim under the doctrine of equitable estoppel.

73.     As more fully set forth herein, equitable estoppel is applicable because Plaintiff has been estopped from previously asserting her claim due to Defendants and/or their agents, servants and/or employees' affirmative wrongdoing, including threatening her, being the sole reason for the delay between the accrual of her cause of action and the commencement of this proceeding.

74.     Indeed, as demonstrated herein and as referenced by District Attorney Vance, Defendants "deployed nothing less than an army of spies to keep [Weinstein's victims] silent."[29] Accordingly, there can be no doubt that Defendants' conduct amounted to "fraud, misrepresentation, threat, or deception which, prior to Harvey Weinstein's arrest and conviction, caused Plaintiff to refrain from filing her claim.

75.     Further, as has been widely reported, if a young girl or woman refused to give in to Harvey Weinstein's advances and/or speak out against what he had done to them, "Weinstein and his associates used nondisclosure agreements, payoffs, and legal threats to suppress their accounts."[30] This includes a report that shortly before The New York Times and The New Yorker finally revealed the decades-long pattern of harassment, Weinstein and his legal team began

[29] https://www.manhattanda.org/d-a-vance-harvey-weinstein-sentenced-to-23-years-in-prison
[30] https://www.newyorker.com/news/news-desk/from-aggressive-overtures-to-sexual-assaultharvey-weinsteins-accusers-tell-their-stories

calling his accusers and threatening them should they continue to talk to media publications; they also threatened to sue The New York Times and other outlets for their reporting on Weinstein's predatory past.31

76.    This type of behavior, which was known throughout the industry, including Plaintiff, actually and reasonably placed Plaintiff under duress and fear, and caused her to abstain from asserting her legal rights in response to Weinstein sexually abusing her and is the exact reason for the doctrine of equitable estoppel.

77.    As such, the doctrine of equitable estoppel is appropriate where, as here, it would be unjust to allow a defendant to assert a statute of limitations defense.

**Harvey Weinstein's Sexual Abuse of Jane Doe IV**

78.    In or about 2013 when Plaintiff was approximately twenty-eight years old, Harvey Weinstein falsely imprisoned, sexually assaulted and sexually battered her.

79.    Plaintiff met Harvey Weinstein while attending the Venice Film Festival. It was at that time that Weinstein invited Plaintiff to meet with him at his office for an audition which one of Weinstein's secretaries, Charlotte Carroll, set up.

80.    The meeting ultimately took place a few months later at which time Weinstein invited Plaintiff to dinner. Plaintiff went to the dinner with her friend and Charlotte Carroll was there as well.

81.    After dinner, Weinstein called Plaintiff's room around midnight and asked her to come by his suite. Apprehensive, given how late the call was made, Plaintiff brought her friend along to Weinstein's suite. In the room, Weinstein briefly talked with Plaintiff about possible roles, jobs, etc. while they had some champagne. After the brief exchange about work, Weinstein

31 Id.

then said he wanted to talk with Plaintiff "one on one" and convinced Plaintiff's friend to leave the suite. Weinstein and Plaintiff then talked for a few more minutes about available positions in modeling agencies and in movies that he and his company were producing.

82.     Eventually, Weinstein took Plaintiff's hand and put it on his crotch; Plaintiff was intimidated and laughed awkwardly, stating she has a boyfriend. This did not deter Weinstein though as he continued to take his pants off completely, exposing his penis.

83.     Throughout this time, Weinstein maintained a tight grip on Plaintiff's hand, refusing to let her go. He then proceeded to touch himself to the point of arousal, at which point he grabbed Plaintiff by the back of the head, pushing it down onto his penis, thereby forcing her to fellate him to completion. At this point, he finally let Plaintiff's hand go, she quickly exited the suite and returned to her room and told her friend about what had just happened. Knowing what Weinstein had done to numerous women he had abused previously, Plaintiff became fearful and intimidated that Weinstein would end her career too if she ever came forward or took legal action, so she and her friend decided that they would keep the incident between them.

84.     As a result of the aforementioned false imprisonment, sexual assault and sexual battery, Plaintiff suffered, and continues to suffer from severe and serious injuries, including, but not limited to, severe emotional distress and physical manifestations thereof.

85.     Plaintiff's claim is also timely brought pursuant to both CPLR § 215(8)(b) and the doctrine of equitable estoppel.

86.     First, CPLR § 215(8)(b) provides that "[w]henever it is shown that a criminal action against the same defendant has been commenced with respect to the event or occurrence from which a claim governed by this section arises, and such criminal action is for rape in the first degree as defined in section 130.35 of the penal law , or criminal sexual act in the first degree

as defined in section 130.50 of the penal law... the plaintiff shall have at least five years from the termination of the criminal action as defined in section 1.20 of the criminal procedure law in which to commence the civil action...”

87.    As is well established, the criminal action against Harvey Weinstein for, *inter alia*, rape in the first degree as defined in section 130.35 of the penal law and criminal sexual act in the first degree as defined in section 130.50 of the penal law, was terminated on March 11, 2020 when he was sentenced to twenty-three-years in prison.

88.    Accordingly, because Harvey Weinstein engaged in oral sexual conduct with Plaintiff by forcible compulsion in violation of New York Penal Law 130.50 (criminal sexual act in the first degree), her claim is timely brought pursuant to CPLR § 215(8)(b).

89.    Second, Defendants should be barred from asserting expiration of the statute of limitations as an affirmative defense as it pertains to Plaintiff Jane Doe III's claim under the doctrine of equitable estoppel.

90.    As more fully set forth herein, equitable estoppel is applicable because Plaintiff has been estopped from previously asserting her claim due to Defendants and/or their agents, servants and/or employees' affirmative wrongdoing, including but not limited to threats of harm, being the sole reason for the delay between the accrual of her cause of action and the commencement of this proceeding.

91.    Indeed, as demonstrated herein and as referenced by District Attorney Vance, Defendants “deployed nothing less than an army of spies to keep [Weinstein's victims] silent.”[32] Accordingly, there can be no doubt that Defendants' conduct amounted to “fraud,

---

[32] https://www.manhattanda.org/d-a-vance-harvey-weinstein-sentenced-to-23-years-in-prison

Case 1:20-cv-05241 Document 1-1 Filed 07/08/20 Page 25 of 69

misrepresentation, threat, or deception which, prior to Harvey Weinstein's arrest and conviction, caused Plaintiff to refrain from filing her claim.

92. Indeed, as reported by Ronan Farrow in the now "infamous" The New Yorker piece entitled "From Aggressive Overtures to Sexual Assault: Harvey Weinstein's Accusers Tell Their Stories," if a young girl or woman refused to give in to Harvey Weinstein's advances and/or speak out against what he had done to them, "Weinstein and his associates used nondisclosure agreements, payoffs, and legal threats to suppress their accounts."[33] This includes a report that shortly before The New York Times and The New Yorker finally revealed the decades-long pattern of harassment, Weinstein and his legal team began calling his accusers and threatening them should they continue to talk to media publications; they also threatened to sue The New York Times and other outlets for their reporting on Weinstein's predatory past.[34]

93. This type of behavior, which was known throughout the industry, actually and reasonably placed Plaintiff under duress and induced her to abstain from asserting her legal rights in response to Weinstein sexually abusing her and is the exact type of behavior the doctrine of equitable estoppel is set up to alleviate.

94. As such, the doctrine of equitable estoppel is appropriate where, as here, it would be unjust to allow a defendant to assert a statute of limitations defense.

### Robert Weinstein's Knowledge and Active Concealment of Harvey Weinstein's Sexual Misconduct

95. As has been demonstrated extensively through prior settlements and in-depth interviews, Robert Weinstein was well-aware that his brother had an insatiable propensity to

---

[33] https://www.newyorker.com/news/news-desk/from-aggressive-overtures-to-sexual-assaultharvey-weinsteins-accusers-tell-their-stories
[34] Id.

sexually abuse young girls and women, something that he not only failed to stop, but ostensibly helped to conceal and allow to continue on for decades.

96.    As stated by Kathy DeClesis, Robert Weinstein's assistant at Miramax in the early 1990s, in The New York Times article entitled "Harvey Weinstein Paid Off Sexual Harassment Accusers for Decades", Harvey Weinstein's harassment of women "wasn't a secret to the inner circle."[35]

97.    There can be no doubt that Robert Weinstein knew about his brother's abhorrent conduct as far back as 1990 as according to an article published by the New York Times entitled "Weinstein's Complicity Machine", Robert Weinstein participated in settling a sexual assault claims made against brother in 1990 by one of his assistants.[36]

98.    Then in 1998, as referenced in a New Yorker article entitled "Harvey Weinstein's Secret Settlements", Robert Weinstein personally paid £250,000 to be split between two of Harvey Weinstein's former assistants at Miramax who claimed that he repeatedly sexually harassed them.[37]

99.    This particular settlement agreement, which explicitly listed Robert Weinstein, Harvey Weinstein and Miramax among the parties being released, contained and included strict confidentiality agreements that stated only Robert or Harvey Weinstein could consent to the release of the covered information.[38]

100.    Nonetheless, Zelda Perkins, one of the two women who were a part of the settlement referenced in paragraph 98, decided to break the agreement in 2017 when she sensed

---

[35] https://www.nytimes.com/2017/10/05/us/harvey-weinstein-harassment-allegations.html
[36] https://www.nytimes.com/interactive/2017/12/05/us/harvey-weinstein-complicity.html
[37] https://www.newyorker.com/news/news-desk/harvey-weinsteins-secret-settlements
[38] https://www.parliament.uk/documents/commons-committees/women-and-equalities/Correspondence/Zelda-Perkins-SHW0058.pdf

Case 1:20-cv-05241 Document 1-1 Filed 07/08/20 Page 27 of 69

that it was not being honored by the Defendants. Perkins insisted that the settlement agreements include: a mandate that Harvey Weinstein partake in therapy for a minimum of a year; a requirement that Miramax inform Disney, as their parent company, if the Weinsteins ever entered into another similar type of settlement or agreement in the future and, that if they were not prepared to do so, Miramax would be required to fire Weinstein.[39]

101.    However, as demonstrated through the dozens of media reports and victims who have come forward with similar allegations since Perkins' agreement was executed, Weinstein's conduct continued for several more decades which is what ultimately led Perkins to speak out despite the risk of serious legal consequences. As for how that occurred, Perkins said that "[i]t's ... the system that protected him and enabled him, because that's the only thing [that can be changed going forward]. Money and power enabled him ... Ultimately, the reason Harvey Weinstein followed the route he did is because he was allowed to..."[40]

102.    As such, there is no doubt that Robert Weinstein knew, or should have known, that his brother was a dangerous predator likely to sexually abuse other women like Plaintiffs given that he witnessed his brother's behavior; received direct and indirect verbal and written complaints made by and on behalf of female victims and/or employees of Miramax who were sexually abused by Harvey Weinstein; and, knew of and explicitly authorized his company, Miramax, to settle claims by women who were sexually abused by Harvey Weinstein.

**Miramax's Knowledge of Harvey Weinstein's
Propensity to Engage in Sexual Harassment and Sexual Assault**

103.    In addition to Robert Weinstein, other executives at Miramax also knew that Harvey Weinstein had the propensity to utilize his position at the company to lure unsuspecting

---

[39] Ronan Farrow, Catch and Kill: Lies, Spies, and a Conspiracy to Protect Predators (2019)
[40] Id.

Case 1:20-cv-05241  Document 1-1  Filed 07/08/20  Page 28 of 69

girls and women in, under the guise of doing business on behalf of the company, and sexually harass and abuse them.

104.    One of these executives was Irwin Reiter ("Reiter"), the Executive Vice President of Accounting and Financial Reporting for Miramax from 1989 to 2005. Reiter has admitted that Weinstein's mistreatment of women was an ongoing problem and one that he discussed with other officers within Miramax, including Robert Weinstein. While Reiter claims that as he became more and more alarmed by Weinstein's behavior towards women, he raised concerns within the company, such concerns fell on deaf ears. Nonetheless, Reiter, the executive tasked with handling the reviewing of and payment of settlements to Harvey Weinstein's victims, at both Miramax and Disney, failed to formally report, investigate or take any action to prevent future sexual abuse by Weinstein.[41]

105.    In addition to Reiter, Mark Gill ("Gill"), the head of marketing at Miramax's New York office from approximately 1994 to 1997, and President of Miramax's Los Angeles division from approximately 1997 to 2002 once told The New York Times that Weinstein's treatment of women was "the biggest mess of all." However, like Reiter, Gill failed to formally report, investigate or take any action to prevent future sexual abuse by Weinstein.[42]

106.    In addition to Reiter and Gill, Barbara Schneeweiss ("Schneeweiss"), Harvey Weinstein's executive assistant from 1996 to 2005, also knew or should have known that Harvey Weinstein was regularly sexually abusing women with whom he was meeting with while conducting business on behalf of Miramax.

107.    On information and belief, Schneeweiss actually brought young actresses to Harvey Weinstein, under the guise of having legitimate business meetings, who were ultimately

[41] https://www.nytimes.com/2019/09/08/books/harvey-weinstein-book-kantor-twohey.html
[42] The New York Times Editorial Staff, #MeToo: Women Speak Out Against Sexual Assault (2018)

Case 1:20-cv-05241 Document 1-1 Filed 07/08/20 Page 29 of 69

sexually abused by Weinstein.[43] Therefore, based on her interactions with these victims and Harvey Weinstein, Schneeweiss knew or should have known that Harvey Weinstein was engaging in sexual misconduct and abuse. However, continuing the trend set by Reiter and Gill, and in reality, the overall culture at Miramax under Weinstein, Schneeweiss failed to formally report, investigate or take any action to prevent future sexual abuse by Weinstein.

108. Rick Schwartz ("Schwartz"), Senior Vice President of Production at Miramax from 1999 to 2006, also knew or should have known that Harvey Weinstein was regularly sexually abusing women with whom he was meeting while conducting business on behalf of Miramax.

109. This is because like Schneeweiss, Schwartz was, on information and belief, also tasked with luring victims to Weinstein's hotel suites, and, on information and belief, sometimes even leading them up to Weinstein's suites to further create the sense of legitimacy before leaving and ensuring the victim was left alone with Weinstein.[44]

110. Additionally, on information and belief, after learning about what happened to Zoe Brock, another victim of sexual abuse by Weinstein who has brought forth a claim in the Southern District of New York, Schwartz simply apologized, admitting that "I want you to know that of all the girls he does this to you are the one I really felt bad about. You deserve better."[45]

111. The reality is, once again, like many other executives at Miramax, Schwartz failed to formally report, investigate or take any action to prevent future sexual abuse by Weinstein.

112. Miramax officer Nancy Ashbrooke ("Ashbrooke") also knew or should have known that Harvey Weinstein was regularly sexually abusing young girls and women.

---

[43] https://www.theguardian.com/film/2018/feb/17/harvey-weinstein-canada-lawsuit-barbara-schneeweiss
[44] https://www.thewrap.com/how-harvey-weinstein-accusers-are-taking-charge/
[45] Id.

113.    As the Vice President of Human Resources for Miramax from 1991 to 2000, Ashbrooke was responsible for the oversight of any and all labor relations functions at Miramax including, but not limited to, the investigation of complaints about employees, particularly those relating to sexual abuse and harassment. Ashbrooke had direct knowledge of complaints regarding Weinstein's rampant sexual abuse, and failed to formally report, investigate or take any action to prevent future sexual abuse by Weinstein.[46]

114.    Paul Webster ("Webster"), head of production at Miramax from 1995 to 1997, also knew or should have known that Harvey Weinstein was regularly sexually abusing women with whom he was meeting while conducting business on behalf of Miramax.[47]

115.    Indeed, Webster is quoted as saying that the "sex allegations [against Harvey Weinstein] are just the particularly rancid tip of the iceberg [at the company" and that "Miramax was absolutely a cult, the cult of Harvey, and that's how he got away with his behavior for so long."[48]

116.    Webster also described the corporate culture at Miramax in greater details explaining that "[i]t was crude but very effective. People became brainwashed, some people had nervous breakdowns. People would be hired and then destroyed for no apparent reason, and then their careers and lives would be in tatters."[49]

117.    As for how Harvey Weinstein ran Miramax, Webster noted that "[e]verything Harvey did was all about manipulation and fear. He was a massive bully. He would flatter people,

[46] https://www.pedestrian.tv/news/vice-media-sexual-harassment-nancy-ashbrooke/
[47] https://www.theguardian.com/film/2017/oct/25/the-cult-of-harvey-weinsteins-staff-at-miramax-describe-bullying-and-abuse
[48] Id.
[49] Id.

get the best out of them and then dump on them really, really hard to destroy them. It was this whole thing of breaking people down so you could build them up in your own image."[50]

118.    Crucially, Webster admitted that "I feel so ashamed because I knew, everyone knew. I've been saying it for years that he'd eventually get done for rape, because it's that pattern of bullying behavior combined with the sex stuff. I can say now I did think he was a rapist."[51]

119.    However, like many other executives at Miramax, Webster failed to formally report, investigate or take any action to prevent future sexual abuse by Weinstein.

### Disney's Knowledge of Harvey Weinstein's Propensity to Engage in Sexual Harassment and Sexual Assault

120.    In addition to Miramax's negligence in failing to do anything to stop the runaway train of sexual abuse of young girls and women by Harvey Weinstein, Disney too turned a blind-eye and allowed for the conduct to continue on for several years on end.

121.    As referenced above, when Disney purchased Miramax in 1993, they entered into an employment agreement with Harvey Weinstein and Miramax that ran from 1993 to 1995, and then another which ran from 1995-1999.[52]

122.    Furthermore, despite all of the crimes Weinstein committed throughout these first two agreements as referenced above, Disney entered into a third employment agreement with Harvey Weinstein and Miramax that ran from 1999 to 2005. Crucially, this agreement called for Disney to be held jointly and severally liable with Miramax.[53]

123.    Additionally, while at Miramax, Harvey Weinstein reported directly to Michael Eisner ("Eisner"), Disney's Chief Executive Officer. While Eisner originally delegated oversight

[50] Id.
[51] Id.
[52] https://www.canlii.org/en/on/onsc/doc/2018/2018onsc2122/2018onsc2122.html
[53] Id.

Case 1:20-cv-05241   Document 1-1   Filed 07/08/20   Page 32 of 69

of Miramax to Jeffrey Katzenberg ("Katzenberg"), the Chairman of Disney, Katzenberg

eventually put Bill Mechanic, the head of Disney's international and worldwide video division,

in charge of Miramax.[54]

124.    While Mechanic identified that Miramax did not follow the law in its human

resources practices, he ultimately left in the fall of 1994 after, on information and belief, his

recommendations were largely ignored.

125.    The fact of the matter is, Harvey and Robert Weinstein "always wanted to go

directly to Michael [Eisner]."[55] Thus, it is clear that Miramax was not entirely completely

autonomous.

126.    This is further demonstrated by the aforementioned Schneeweiss who was, on

information and belief, jointly employed by Miramax and Disney. Indeed, according to

Schneeweiss, Disney paid Miramax's employees, controlled Miramax's budget, approved (or

vetoed) Miramax's requests for increased film budgets, audited Miramax's books, and reviewed,

approved (or rejected), and paid for Miramax's business expenses.

127.    Additionally, as more fully set forth above, during the time Disney owned

Miramax, Miramax paid settlements to multiple women who were victims of Harvey Weinstein's

sexual abuse. Based on Disney's control of Miramax finances, Disney knew or should have

known of these payments, which should have prompted additional inquiry and investigation.

128.    Moreover, on information and belief, given that Eisner had assigned eyes and ears

from Disney to watch over Harvey Weinstein – and those persons had knowledge of Harvey

Weinstein's conduct, Eisner and Disney knew or should have known of Harvey Weinstein's

sexual harassment and abuse.

[54] Peter Biskind, Down and Dirty Pictures (2004)
[55] Id.

129.    However, instead of taking action, including but not limited to an independent investigation of Weinstein's conduct and/or the implementation of controls to prevent further abuse and/or the termination of Weinstein, Eisner and Disney chose to publicly misrepresent that they did not have the right to exercise control over Weinstein when, in fact, every corporation has the duty to oversee and supervise its employees, a duty that cannot be contractually waived.

**CAUSES OF ACTION**

**As and For a First Cause of Action for Assault of Jane Doe I as to Harvey Weinstein**

130.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the paragraphs of this Complaint marked and designated 1. through 129., inclusively, with the same force and effect as if hereafter set forth at length.

131.    In or about 1984, Defendant Harvey Weinstein sexually abused Plaintiff Jane Doe I.

132.    Defendant Harvey Weinstein's predatory, sexual and unlawful acts against Plaintiff, as more fully set forth above, created a reasonable apprehension in Plaintiff of immediate harmful or offensive contact to Plaintiff's person, all of which were done intentionally by him to her without her consent.

133.    As a direct and proximate result of the aforementioned assault, Plaintiff has suffered and continue to suffer from emotional and physical injury, including, but not limited to, serious and severe mental distress, anguish, humiliation and embarrassment, as well as economic losses, those total damages in amounts to be proven at trial.

134.    By reason of the foregoing, Plaintiff has incurred medical expenses and will continue to be obligated to expend sums of money for medical care and attention in an effort to cure herself of her injuries. On information and belief, said injuries are of a permanent and lasting

Case 1:20-cv-05241   Document 1-1   Filed 07/08/20   Page 34 of 69

nature and have incapacitated Plaintiff from attending her regular activities, those total damages in amounts to be proven at trial.

135.    As such, Plaintiff is entitled to compensatory damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just, and adequate. Furthermore, because Defendant Harvey Weinstein committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of causing injuries to Plaintiff from an improper and evil motive  amounting to malice and in conscious disregard of Plaintiff's rights, Plaintiff is further entitled to punitive and exemplary damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just and adequate to deter future similar conduct.

136.    The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

137.    This action falls within exceptions to Article 16 of the C.P.L.R.

**As and For a Second Cause of Action for Battery of Jane Doe I as to Harvey Weinstein**

138.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the paragraphs of this Complaint marked and designated 1. through 137., inclusively, with the same force and effect as if hereafter set forth at length.

139.    Defendant Harvey Weinstein's predatory, sexual and unlawful acts against Plaintiff, as more fully set forth above, amounted to a series of harmful and offensive contacts to Plaintiff's person, all of which were done intentionally by him to her without her consent.

140.    As a direct and proximate result of the aforementioned battery, Plaintiff has suffered and continue to suffer from emotional and physical injury, including, but not limited to, serious and severe mental distress, anguish, humiliation and embarrassment, as well as economic losses, those total damages in amounts to be proven at trial.

141.    By reason of the foregoing, Plaintiff has incurred medical expenses and will continue to be obligated to expend sums of money for medical care and attention in an effort to cure herself of her injuries. On information and belief, said injuries are of a permanent and lasting nature and have incapacitated Plaintiff from attending her regular activities, those total damages in amounts to be proven at trial.

142.    As such, Plaintiff is entitled to compensatory damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just, and adequate. Furthermore, because Defendant Harvey Weinstein committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of causing injuries to Plaintiff from an improper and evil motive  amounting to malice and in conscious disregard of Plaintiff's rights, Plaintiff is further entitled to punitive and exemplary damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just and adequate to deter future similar conduct.

143.    The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

144.    This action falls within exceptions to Article 16 of the C.P.L.R.

**As and For a Third Cause of Action for False
Imprisonment of Jane Doe I as to Harvey Weinstein**

145.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the paragraphs of this Complaint marked and designated 1. through 144., inclusively, with the same force and effect as if hereafter set forth at length.

146.    Defendant Harvey Weinstein's predatory, sexual and unlawful acts against Plaintiff, as more fully set forth above, amounted to willful detention of Plaintiff without authority of law, all of which were done intentionally by him to her without her consent.

147.    As a direct and proximate result of the aforementioned false imprisonment, Plaintiff has suffered and continue to suffer from emotional and physical injury, including, but not limited to, serious and severe mental distress, anguish, humiliation and embarrassment, as well as economic losses, those total damages in amounts to be proven at trial.

148.    By reason of the foregoing, Plaintiff has incurred medical expenses and will continue to be obligated to expend sums of money for medical care and attention in an effort to cure herself of her injuries. On information and belief, said injuries are of a permanent and lasting nature and have incapacitated Plaintiff from attending her regular activities, those total damages in amounts to be proven at trial.

149.    As such, Plaintiff is entitled to compensatory damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just, and adequate. Furthermore, because Defendant Harvey Weinstein committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of causing injuries to Plaintiff from an improper and evil motive  amounting to malice and in conscious disregard of Plaintiff's rights, Plaintiff is further entitled to punitive and exemplary damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just and adequate to deter future similar conduct.

150.    The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

151.    This action falls within exceptions to Article 16 of the C.P.L.R.

### As and For a Fourth Cause of Action for Intentional Infliction of Emotional Distress of Jane Doe I as to Harvey Weinstein

152.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the paragraphs of this Complaint marked and designated 1. through 151., inclusively, with the same force and effect as if hereafter set forth at length.

153.    Defendant Harvey Weinstein engaged in outrageous conduct towards Plaintiff with the intention to cause, or with reckless disregard for the probability of causing, Plaintiff to suffer severe emotional distress.

154.    As a direct and proximate result of the aforementioned intentional infliction of emotional distress, Plaintiff has suffered and continue to suffer from emotional and physical injury, including, but not limited to, serious and severe mental distress, anguish, humiliation and embarrassment, as well as economic losses, those total damages in amounts to be proven at trial.

155.    By reason of the foregoing, Plaintiff has incurred medical expenses and will continue to be obligated to expend sums of money for medical care and attention in an effort to cure herself of her injuries. On information and belief, said injuries are of a permanent and lasting nature and have incapacitated Plaintiff from attending her regular activities, those total damages in amounts to be proven at trial.

156.    As such, Plaintiff is entitled to compensatory damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just, and adequate. Furthermore, because Defendant Harvey Weinstein committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of causing injuries to Plaintiff from an improper and evil motive  amounting to malice and in conscious disregard of Plaintiff's rights, Plaintiff is further entitled to punitive and exemplary damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just and adequate to deter future similar conduct.

157.    The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

158.    This action falls within exceptions to Article 16 of the C.P.L.R.

Case 1:20-cv-05241   Document 1-1   Filed 07/08/20   Page 38 of 69

**As and For a Fifth Cause of Action for Assault of Jane Doe II as to Harvey Weinstein**

159.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the paragraphs of this Complaint marked and designated 1. through 158., inclusively, with the same force and effect as if hereafter set forth at length.

160.    In or about 1994, Defendant Harvey Weinstein sexually abused Plaintiff Jane Doe II.

161.    Defendant Harvey Weinstein's predatory, sexual and unlawful acts against Plaintiff, as more fully set forth above, created a reasonable apprehension in Plaintiff of immediate harmful or offensive contact to Plaintiff's person, all of which were done intentionally by him to her without her consent.

162.    As a direct and proximate result of the aforementioned assault, Plaintiff has suffered and continue to suffer from emotional and physical injury, including, but not limited to, serious and severe mental distress, anguish, humiliation and embarrassment, as well as economic losses, those total damages in amounts to be proven at trial.

163.    By reason of the foregoing, Plaintiff has incurred medical expenses and will continue to be obligated to expend sums of money for medical care and attention in an effort to cure herself of her injuries. On information and belief, said injuries are of a permanent and lasting nature and have incapacitated Plaintiff from attending her regular activities, those total damages in amounts to be proven at trial.

164.    As such, Plaintiff is entitled to compensatory damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just, and adequate. Furthermore, because Defendant Harvey Weinstein committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of causing injuries to Plaintiff from an improper and

evil motive amounting to malice and in conscious disregard of Plaintiff's rights, Plaintiff is further entitled to punitive and exemplary damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just and adequate to deter future similar conduct.

165. The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

166. This action falls within exceptions to Article 16 of the C.P.L.R.

**As and For a Sixth Cause of Action for Battery of Jane Doe II as to Harvey Weinstein**

167. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the paragraphs of this Complaint marked and designated 1. through 166., inclusively, with the same force and effect as if hereafter set forth at length.

168. Defendant Harvey Weinstein's predatory, sexual and unlawful acts against Plaintiff, as more fully set forth above, amounted to a series of harmful and offensive contacts to Plaintiff's person, all of which were done intentionally by him to her without her consent.

169. As a direct and proximate result of the aforementioned battery, Plaintiff has suffered and continue to suffer from emotional and physical injury, including, but not limited to, serious and severe mental distress, anguish, humiliation and embarrassment, as well as economic losses, those total damages in amounts to be proven at trial.

170. By reason of the foregoing, Plaintiff has incurred medical expenses and will continue to be obligated to expend sums of money for medical care and attention in an effort to cure herself of her injuries. On information and belief, said injuries are of a permanent and lasting nature and have incapacitated Plaintiff from attending her regular activities, those total damages in amounts to be proven at trial.

Case 1:20-cv-05241 Document 1-1 Filed 07/08/20 Page 40 of 69

171.     As such, Plaintiff is entitled to compensatory damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just, and adequate. Furthermore, because Defendant Harvey Weinstein committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of causing injuries to Plaintiff from an improper and evil motive  amounting to malice and in conscious disregard of Plaintiff's rights, Plaintiff is further entitled to punitive and exemplary damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just and adequate to deter future similar conduct.

172.     The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

173.     This action falls within exceptions to Article 16 of the C.P.L.R.

### As and For a Seventh Cause of Action for False Imprisonment of Jane Doe II as to Harvey Weinstein

174.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the paragraphs of this Complaint marked and designated 1. through 173., inclusively, with the same force and effect as if hereafter set forth at length.

175.     Defendant Harvey Weinstein's predatory, sexual and unlawful acts against Plaintiff, as more fully set forth above, amounted to willful detention of Plaintiff without authority of law, all of which were done intentionally by him to her without her consent.

176.     As a direct and proximate result of the aforementioned false imprisonment, Plaintiff has suffered and continue to suffer from emotional and physical injury, including, but not limited to, serious and severe mental distress, anguish, humiliation and embarrassment, as well as economic losses, those total damages in amounts to be proven at trial.

177.     By reason of the foregoing, Plaintiff has incurred medical expenses and will continue to be obligated to expend sums of money for medical care and attention in an effort to

Case 1:20-cv-05241  Document 1-1  Filed 07/08/20  Page 41 of 69

cure herself of her injuries. On information and belief, said injuries are of a permanent and lasting nature and have incapacitated Plaintiff from attending her regular activities, those total damages in amounts to be proven at trial.

178.    As such, Plaintiff is entitled to compensatory damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just, and adequate. Furthermore, because Defendant Harvey Weinstein committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of causing injuries to Plaintiff from an improper and evil motive  amounting to malice and in conscious disregard of Plaintiff's rights, Plaintiff is further entitled to punitive and exemplary damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just and adequate to deter future similar conduct.

179.    The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

180.    This action falls within exceptions to Article 16 of the C.P.L.R.

### As and For an Eighth Cause of Action for Intentional Infliction of Emotional Distress of Jane Doe II as to Harvey Weinstein

181.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the paragraphs of this Complaint marked and designated 1. through 180., inclusively, with the same force and effect as if hereafter set forth at length.

182.    Defendant Harvey Weinstein engaged in outrageous conduct towards Plaintiff with the intention to cause, or with reckless disregard for the probability of causing, Plaintiff to suffer severe emotional distress.

183.    As a direct and proximate result of the aforementioned intentional infliction of emotional distress, Plaintiff has suffered and continue to suffer from emotional and physical

injury, including, but not limited to, serious and severe mental distress, anguish, humiliation and embarrassment, as well as economic losses, those total damages in amounts to be proven at trial.

184.    By reason of the foregoing, Plaintiff has incurred medical expenses and will continue to be obligated to expend sums of money for medical care and attention in an effort to cure herself of her injuries. On information and belief, said injuries are of a permanent and lasting nature and have incapacitated Plaintiff from attending her regular activities, those total damages in amounts to be proven at trial.

185.    As such, Plaintiff is entitled to compensatory damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just, and adequate. Furthermore, because Defendant Harvey Weinstein committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of causing injuries to Plaintiff from an improper and evil motive  amounting to malice and in conscious disregard of Plaintiff's rights, Plaintiff is further entitled to punitive and exemplary damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just and adequate to deter future similar conduct.

186.    The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

187.    This action falls within exceptions to Article 16 of the C.P.L.R.

**As and For a Ninth Cause of Action for Assault of Jane Doe III as to Harvey Weinstein**

188.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the paragraphs of this Complaint marked and designated 1. through 187., inclusively, with the same force and effect as if hereafter set forth at length.

189.    In or about 2008, Defendant Harvey Weinstein sexually abused Plaintiff Jane Doe III.

Case 1:20-cv-05241  Document 1-1  Filed 07/08/20  Page 43 of 69

190.    Defendant Harvey Weinstein's predatory, sexual and unlawful acts against Plaintiff, as more fully set forth above, created a reasonable apprehension in Plaintiff of immediate harmful or offensive contact to Plaintiff's person, all of which were done intentionally by him to her without her consent.

191.    As a direct and proximate result of the aforementioned assault, Plaintiff has suffered and continue to suffer from emotional and physical injury, including, but not limited to, serious and severe mental distress, anguish, humiliation and embarrassment, as well as economic losses, those total damages in amounts to be proven at trial.

192.    By reason of the foregoing, Plaintiff has incurred medical expenses and will continue to be obligated to expend sums of money for medical care and attention in an effort to cure herself of her injuries. On information and belief, said injuries are of a permanent and lasting nature and have incapacitated Plaintiff from attending her regular activities, those total damages in amounts to be proven at trial.

193.    As such, Plaintiff is entitled to compensatory damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just, and adequate. Furthermore, because Defendant Harvey Weinstein committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of causing injuries to Plaintiff from an improper and evil motive amounting to malice and in conscious disregard of Plaintiff's rights, Plaintiff is further entitled to punitive and exemplary damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just and adequate to deter future similar conduct.

194.    The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

195.    This action falls within exceptions to Article 16 of the C.P.L.R.

**As and For a Tenth Cause of Action for Battery of Jane Doe III as to Harvey Weinstein**

196.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the paragraphs of this Complaint marked and designated 1. through 195., inclusively, with the same force and effect as if hereafter set forth at length.

197.    Defendant Harvey Weinstein's predatory, sexual and unlawful acts against Plaintiff, as more fully set forth above, amounted to a series of harmful and offensive contacts to Plaintiff's person, all of which were done intentionally by him to her without her consent.

198.    As a direct and proximate result of the aforementioned battery, Plaintiff has suffered and continue to suffer from emotional and physical injury, including, but not limited to, serious and severe mental distress, anguish, humiliation and embarrassment, as well as economic losses, those total damages in amounts to be proven at trial.

199.    By reason of the foregoing, Plaintiff has incurred medical expenses and will continue to be obligated to expend sums of money for medical care and attention in an effort to cure herself of her injuries. On information and belief, said injuries are of a permanent and lasting nature and have incapacitated Plaintiff from attending her regular activities, those total damages in amounts to be proven at trial.

200.    As such, Plaintiff is entitled to compensatory damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just, and adequate. Furthermore, because Defendant Harvey Weinstein committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of causing injuries to Plaintiff from an improper and evil motive  amounting to malice and in conscious disregard of Plaintiff's rights, Plaintiff is further entitled to punitive and exemplary damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just and adequate to deter future similar conduct.

201.    The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

202.    This action falls within exceptions to Article 16 of the C.P.L.R.

**As and For an Eleventh Cause of Action for False**
**Imprisonment of Jane Doe III as to Harvey Weinstein**

203.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the paragraphs of this Complaint marked and designated 1. through 202., inclusively, with the same force and effect as if hereafter set forth at length.

204.    Defendant Harvey Weinstein's predatory, sexual and unlawful acts against Plaintiff, as more fully set forth above, amounted to willful detention of Plaintiff without authority of law, all of which were done intentionally by him to her without her consent.

205.    As a direct and proximate result of the aforementioned false imprisonment, Plaintiff has suffered and continue to suffer from emotional and physical injury, including, but not limited to, serious and severe mental distress, anguish, humiliation and embarrassment, as well as economic losses, those total damages in amounts to be proven at trial.

206.    By reason of the foregoing, Plaintiff has incurred medical expenses and will continue to be obligated to expend sums of money for medical care and attention in an effort to cure herself of her injuries. On information and belief, said injuries are of a permanent and lasting nature and have incapacitated Plaintiff from attending her regular activities, those total damages in amounts to be proven at trial.

207.    As such, Plaintiff is entitled to compensatory damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just, and adequate. Furthermore, because Defendant Harvey Weinstein committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of causing injuries to Plaintiff from an improper and

evil motive amounting to malice and in conscious disregard of Plaintiff's rights, Plaintiff is further entitled to punitive and exemplary damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just and adequate to deter future similar conduct.

208.    The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

209.    This action falls within exceptions to Article 16 of the C.P.L.R.

### As and For a Twelfth Cause of Action for Intentional Infliction of Emotional Distress of Jane Doe III as to Harvey Weinstein

210.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the paragraphs of this Complaint marked and designated 1. through 209., inclusively, with the same force and effect as if hereafter set forth at length.

211.    Defendant Harvey Weinstein engaged in outrageous conduct towards Plaintiff with the intention to cause, or with reckless disregard for the probability of causing, Plaintiff to suffer severe emotional distress.

212.    As a direct and proximate result of the aforementioned intentional infliction of emotional distress, Plaintiff has suffered and continue to suffer from emotional and physical injury, including, but not limited to, serious and severe mental distress, anguish, humiliation and embarrassment, as well as economic losses, those total damages in amounts to be proven at trial.

213.    By reason of the foregoing, Plaintiff has incurred medical expenses and will continue to be obligated to expend sums of money for medical care and attention in an effort to cure herself of her injuries. On information and belief, said injuries are of a permanent and lasting nature and have incapacitated Plaintiff from attending her regular activities, those total damages in amounts to be proven at trial.

214.    As such, Plaintiff is entitled to compensatory damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just, and adequate. Furthermore, because Defendant Harvey Weinstein committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of causing injuries to Plaintiff from an improper and evil motive  amounting to malice and in conscious disregard of Plaintiff's rights, Plaintiff is further entitled to punitive and exemplary damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just and adequate to deter future similar conduct.

215.    The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

216.    This action falls within exceptions to Article 16 of the C.P.L.R.

### As and For a Thirteenth Cause of Action for
### Assault of Jane Doe IV as to Harvey Weinstein

217.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the paragraphs of this Complaint marked and designated 1. through 216., inclusively, with the same force and effect as if hereafter set forth at length.

218.    In or about 2013, Defendant Harvey Weinstein sexually abused Plaintiff Jane Doe IV.

219.    Defendant Harvey Weinstein's predatory, sexual and unlawful acts against Plaintiff, as more fully set forth above, created a reasonable apprehension in Plaintiff of immediate harmful or offensive contact to Plaintiff's person, all of which were done intentionally by him to her without her consent.

220.    As a direct and proximate result of the aforementioned assault, Plaintiff has suffered and continue to suffer from emotional and physical injury, including, but not limited to,

Case 1:20-cv-05241   Document 1-1   Filed 07/08/20   Page 48 of 69

serious and severe mental distress, anguish, humiliation and embarrassment, as well as economic losses, those total damages in amounts to be proven at trial.

221.     By reason of the foregoing, Plaintiff has incurred medical expenses and will continue to be obligated to expend sums of money for medical care and attention in an effort to cure herself of her injuries. On information and belief, said injuries are of a permanent and lasting nature and have incapacitated Plaintiff from attending her regular activities, those total damages in amounts to be proven at trial.

222.     As such, Plaintiff is entitled to compensatory damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just, and adequate. Furthermore, because Defendant Harvey Weinstein committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of causing injuries to Plaintiff from an improper and evil motive  amounting to malice and in conscious disregard of Plaintiff's rights, Plaintiff is further entitled to punitive and exemplary damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just and adequate to deter future similar conduct.

223.     The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

224.     This action falls within exceptions to Article 16 of the C.P.L.R.

**As and For a Fourteenth Cause of Action for
Battery of Jane Doe IV as to Harvey Weinstein**

225.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the paragraphs of this Complaint marked and designated 1. through 224., inclusively, with the same force and effect as if hereafter set forth at length.

226.    Defendant Harvey Weinstein's predatory, sexual and unlawful acts against Plaintiff, as more fully set forth above, amounted to a series of harmful and offensive contacts to Plaintiff's person, all of which were done intentionally by him to her without her consent.

227.    As a direct and proximate result of the aforementioned battery, Plaintiff has suffered and continue to suffer from emotional and physical injury, including, but not limited to, serious and severe mental distress, anguish, humiliation and embarrassment, as well as economic losses, those total damages in amounts to be proven at trial.

228.    By reason of the foregoing, Plaintiff has incurred medical expenses and will continue to be obligated to expend sums of money for medical care and attention in an effort to cure herself of her injuries. On information and belief, said injuries are of a permanent and lasting nature and have incapacitated Plaintiff from attending her regular activities, those total damages in amounts to be proven at trial.

229.    As such, Plaintiff is entitled to compensatory damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just, and adequate. Furthermore, because Defendant Harvey Weinstein committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of causing injuries to Plaintiff from an improper and evil motive  amounting to malice and in conscious disregard of Plaintiff's rights, Plaintiff is further entitled to punitive and exemplary damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just and adequate to deter future similar conduct.

230.    The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

231.    This action falls within exceptions to Article 16 of the C.P.L.R.

## As and For a Fifteenth Cause of Action for False
## Imprisonment of Jane Doe IV as to Harvey Weinstein

232.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the paragraphs of this Complaint marked and designated 1. through 231., inclusively, with the same force and effect as if hereafter set forth at length.

233.    Defendant Harvey Weinstein's predatory, sexual and unlawful acts against Plaintiff, as more fully set forth above, amounted to willful detention of Plaintiff without authority of law, all of which were done intentionally by him to her without her consent.

234.    As a direct and proximate result of the aforementioned false imprisonment, Plaintiff has suffered and continue to suffer from emotional and physical injury, including, but not limited to, serious and severe mental distress, anguish, humiliation and embarrassment, as well as economic losses, those total damages in amounts to be proven at trial.

235.    By reason of the foregoing, Plaintiff has incurred medical expenses and will continue to be obligated to expend sums of money for medical care and attention in an effort to cure herself of her injuries. On information and belief, said injuries are of a permanent and lasting nature and have incapacitated Plaintiff from attending her regular activities, those total damages in amounts to be proven at trial.

236.    As such, Plaintiff is entitled to compensatory damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just, and adequate. Furthermore, because Defendant Harvey Weinstein committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of causing injuries to Plaintiff from an improper and evil motive  amounting to malice and in conscious disregard of Plaintiff's rights, Plaintiff is further entitled to punitive and exemplary damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just and adequate to deter future similar conduct.

237.    The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

238.    This action falls within exceptions to Article 16 of the C.P.L.R.

**As and For a Sixteenth Cause of Action for Intentional
Infliction of Emotional Distress of Jane Doe IV as to Harvey Weinstein**

239.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the paragraphs of this Complaint marked and designated 1. through 238., inclusively, with the same force and effect as if hereafter set forth at length.

240.    Defendant Harvey Weinstein engaged in outrageous conduct towards Plaintiff with the intention to cause, or with reckless disregard for the probability of causing, Plaintiff to suffer severe emotional distress.

241.    As a direct and proximate result of the aforementioned intentional infliction of emotional distress, Plaintiff has suffered and continue to suffer from emotional and physical injury, including, but not limited to, serious and severe mental distress, anguish, humiliation and embarrassment, as well as economic losses, those total damages in amounts to be proven at trial.

242.    By reason of the foregoing, Plaintiff has incurred medical expenses and will continue to be obligated to expend sums of money for medical care and attention in an effort to cure herself of her injuries. On information and belief, said injuries are of a permanent and lasting nature and have incapacitated Plaintiff from attending her regular activities, those total damages in amounts to be proven at trial.

243.    As such, Plaintiff is entitled to compensatory damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just, and adequate. Furthermore, because Defendant Harvey Weinstein committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of causing injuries to Plaintiff from an improper and

Case 1:20-cv-05241 Document 1-1 Filed 07/08/20 Page 52 of 69

evil motive amounting to malice and in conscious disregard of Plaintiff's rights, Plaintiff is further entitled to punitive and exemplary damages from Defendant Harvey Weinstein in such sums as a jury would find fair, just and adequate to deter future similar conduct.

244. The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

245. This action falls within exceptions to Article 16 of the C.P.L.R.

**As and For a Seventeenth Cause of Action for**
**Negligence as to Robert Weinstein, Miramax, Disney and Doe Corp. 1-10**

246. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the paragraphs of this Complaint marked and designated 1. through 245., inclusively, with the same force and effect as if hereafter set forth at length.

247. Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10's conduct described herein, including the negligent hiring, retention and/or supervision of Harvey Weinstein and affirmative acts covering up and empowering Harvey Weinstein to commit sexual assaults, resulted in Harvey Weinstein's commission of the sex crimes against Plaintiffs.

248. Based on prior complaints against Harvey Weinstein, as well as his conduct, statements and other information that could or should have been known, Defendants Robert Weinstein, Disney, Miramax and Doe Corp. 1-10 knew or reasonably should have known that Harvey Weinstein had a propensity to engage in sexual misconduct and would use his position and power to lure Plaintiffs and other similarly situated aspiring female actresses to his apartments, hotel rooms, offices, etc. under the guise of discussing business opportunities to sexually harass, batter, assault, falsely imprison and rape them.

249. Defendant Robert Weinstein's prior "cover ups" for Defendant Harvey Weinstein's sexual misconduct with women with whom he worked created a continuing risk of

Harvey Weinstein would engage in similar sexual misconduct in the future. Nevertheless, Robert Weinstein allowed Harvey Weinstein to have unfettered authority and endless resources such that he was enabled and permitted to engage in sexual misconduct with female employees and actresses, including the Plaintiffs herein. Moreover, Robert Weinstein knew that Harvey Weinstein continued to engage in sexual misconduct and abuse.

250.    Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10 ultimately had a duty of care to properly hire, train, retain, supervise and discipline their employees, including but not limited to Harvey Weinstein, and other employees set forth above, to avoid unreasonable harm to others, including Plaintiffs, or to take steps to alleviate harm caused by their affirmative conduct.

251.    Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10 breached their duty of care by way of their own conduct as alleged herein, including, but not limited to, failing to terminate Harvey Weinstein's employment or taking steps to warn or otherwise reduce the risk that Harvey Weinstein would use his position of power to continue to engage in sexual misconduct with female employees and actresses, including Plaintiffs.

252.    The burden on Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10 to take some action to warn or otherwise reduce the risk of Harvey Weinstein's sexual misconduct was slight, while the harm from Harvey Weinstein's sexual misconduct was grave and caused significant physical and mental harm to vulnerable female employees and aspiring actresses, including Plaintiffs.

253.    Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10's negligent and/or affirmative enabling, encouraging facilitating and allowing Harvey Weinstein to indulge his propensity to sexually abuse, or engage in sexual misconduct, was a substantial factor in

Harvey Weinstein's continuing to sexually abuse women, including Plaintiffs, and causing them harm. Indeed, these Defendants are negligent for fostering, creating and/or permitting a culture where Harvey Weinstein was allows to treat women this way, which was a substantial contributing factor in Harvey Weinstein continuing to do so.

254.    As a direct and proximate result of the aforementioned negligence, Plaintiffs have suffered, and continue to suffer from emotional and physical injury, including, but not limited to, serious and severe mental distress, anguish, humiliation and embarrassment, as well as economic losses, those total damages in amounts to be proven at trial.

255.    By reason of the foregoing, Plaintiffs have incurred medical expenses and will continue to be obligated to expend sums of money for medical care and attention in an effort to cure themselves of their injuries. On information and belief, said injuries are of a permanent and lasting nature and have incapacitated Plaintiffs from attending their regular activities, those total damages in amounts to be proven at trial.

256.    As such, Plaintiffs are entitled to compensatory damages from Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10 in such sums as a jury would find fair, just, and adequate. Furthermore, because Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants and/or employees committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of causing injuries to Plaintiffs from an improper and evil motive  amounting to malice and in conscious disregard of Plaintiffs' rights, Plaintiffs are further entitled to punitive and exemplary damages from Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants and/or employees in such sums as a jury would find fair, just and adequate to deter future similar conduct.

257.   The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

258.   This action falls within exceptions to Article 16 of the C.P.L.R.

**As and For an Eighteenth Cause of Action for Negligent Hiring, Retention and Supervision as to Robert Weinstein, Miramax, Disney and Doe Corp. 1-10**

259.   Plaintiffs repeat, reiterate and reallege each and every allegation contained in the paragraphs of this Complaint marked and designated 1. through 258., inclusively, with the same force and effect as if hereafter set forth at length.

260.   Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10's conduct described herein, including the negligent hiring, retention and/or supervision of Harvey Weinstein and affirmative acts covering up and empowering Harvey Weinstein to commit sexual assaults, resulted in Harvey Weinstein's commission of the sex crimes against Plaintiffs.

261.   Based on prior complaints against Harvey Weinstein, as well as his conduct, statements and other information that could or should have been known, Defendants Robert Weinstein, Disney and Miramax knew or reasonably should have known that Harvey Weinstein had a propensity to engage in sexual misconduct and would use his position and power to lure Plaintiffs and other similarly situated aspiring female actresses to his apartments, hotel rooms, offices, etc. under the guise of discussing business opportunities and once alone with them, to sexually harass, batter, assault, falsely imprison and rape them.

262.   Defendant Robert Weinstein's prior "cover ups" for Defendant Harvey Weinstein's sexual misconduct with women with whom he worked created a continuing risk of Harvey Weinstein would engage in similar sexual misconduct in the future. Nevertheless, Robert Weinstein allowed Harvey Weinstein to have unfettered authority and endless resources such that he was enabled and permitted to engage in sexual misconduct with female employees and

actresses, including the Plaintiffs herein. Moreover, Robert Weinstein knew that Harvey Weinstein continued to engage in sexual misconduct.

263. Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10 improperly hired and continued to employ Harvey Weinstein, failed to terminate Harvey Weinstein's employment and/or take steps to warn or otherwise reduce the risk that Harvey Weinstein would use his position of power to continue to engage in sexual misconduct with female employees and actresses, including Plaintiffs.

264. The burden on Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10 to take some action to warn or otherwise reduce the risk of Harvey Weinstein's sexual misconduct was slight, while the harm from Harvey Weinstein's sexual misconduct was grave and caused significant physical and mental harm to vulnerable female employees and aspiring actresses, including Plaintiffs.

265. Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10's negligent and/or affirmative enabling, encouraging facilitating and allowing Harvey Weinstein to indulge his propensity to sexually abuse, or engage in sexual misconduct, was a substantial factor in causing Plaintiffs' harm.

266. As a direct and proximate result of the aforementioned negligence, Plaintiffs have suffered, and continue to suffer from emotional and physical injury, including, but not limited to, serious and severe mental distress, anguish, humiliation and embarrassment, as well as economic losses, those total damages in amounts to be proven at trial.

267. By reason of the foregoing, Plaintiffs have incurred medical expenses and will continue to be obligated to expend sums of money for medical care and attention in an effort to cure themselves of their injuries. On information and belief, said injuries are of a permanent and

lasting nature and have incapacitated Plaintiffs from attending their regular activities, those total damages in amounts to be proven at trial.

268.    As such, Plaintiffs are entitled to compensatory damages from Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10 in such sums as a jury would find fair, just, and adequate. Furthermore, because Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants and/or employees committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of causing injuries to Plaintiffs from an improper and evil motive  amounting to malice and in conscious disregard of Plaintiffs' rights, Plaintiffs are further entitled to punitive and exemplary damages from Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants and/or employees in such sums as a jury would find fair, just and adequate to deter future similar conduct.

269.    The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

270.    This action falls within exceptions to Article 16 of the C.P.L.R.

**As and For a Nineteenth Cause of Action for Aiding and Abetting Assault as to Robert Weinstein, Miramax, Disney and Doe Corp. 1-10**

271.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in those paragraphs of this complaint marked and designated 1. through 270., inclusive with the same force and effect as if hereafter set forth at length.

272.    Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants and/or employees encouraged, permitted, condoned and created a corporate culture, demeanor, state-of-mind, environment and/or mentality where its employees, specifically Defendant Harvey Weinstein, could and did degrade, demean, mistreat, assault,

Case 1:20-cv-05241   Document 1-1   Filed 07/08/20   Page 58 of 69

batter, falsely imprison and/or abuse women, including Plaintiffs, all without any negative consequences or repercussions.

273.    Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants, principals and/or employees also committed overt acts in furtherance of Defendant Harvey Weinstein's assaults upon Plaintiffs with the intention that said assaults be committed.

274.    Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants and/or employees' overt acts in furtherance of Defendant Harvey Weinstein's assaults upon Plaintiffs were the proximate and actual causes of said assaults.

275.    As a result, and consequence of the actions and/or omissions of Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants and/or employees, Defendant Harvey Weinstein was able to sexually assault, batter, falsely imprison and/or abuse women, including Plaintiffs, without their consent.

276.    Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants and/or employees aided and abetted the assaults of Plaintiffs by Defendant Harvey Weinstein, causing damage to Plaintiffs.

277.    Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants, principals and/or employees provided substantial assistance in Defendant Harvey Weinstein's assaults of Plaintiffs.

278.    As a direct and proximate result of the aforementioned aiding and abetting of assaults, Plaintiffs have suffered, and continue to suffer from emotional and physical injury, including, but not limited to, serious and severe mental distress, anguish, humiliation and embarrassment, as well as economic losses, those total damages in amounts to be proven at trial.

279.    By reason of the foregoing, Plaintiffs have incurred medical expenses and will continue to be obligated to expend sums of money for medical care and attention in an effort to cure themselves of their injuries. On information and belief, said injuries are of a permanent and lasting nature and have incapacitated Plaintiffs from attending their regular activities, those total damages in amounts to be proven at trial.

280.    As such, Plaintiffs are entitled to compensatory damages from Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10 in such sums as a jury would find fair, just, and adequate. Furthermore, because Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants, principals and/or employees committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of causing injuries to Plaintiffs from an improper and evil motive  amounting to malice and in conscious disregard of Plaintiffs' rights, Plaintiffs are further entitled to punitive and exemplary damages from Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants and/or employees in such sums as a jury would find fair, just and adequate to deter future similar conduct.

281.    The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

282.    This action falls within the exceptions to Article 16 of the C.P.L.R.

**As and For a Twentieth Cause of Action for Assault as
to Robert Weinstein, Miramax, Disney and Doe Corp. 1-10**

283.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in those paragraphs of the Complaint marked and designated 1. through 282., inclusive, with the same force and effect as if hereafter set forth at length.

284.    During the time that the Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants, principals and/or employees allowed, encourages and created the corporate culture and environment that would allow Defendant Harvey Weinstein to sexually assault, batter, falsely imprison and/or abuse women, Defendant Harvey Weinstein did sexually assault, batter, falsely imprison and/or abuse Plaintiffs without their consent.

285.    Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants, principals and/or employees turned a blind-eye to the graphic, forced, and unlawful behavior of their agents, servants and/or employees, specifically Harvey Weinstein, which amounted to a series of events that created a reasonable apprehension in Plaintiffs of immediate, harmful or offensive contact to Plaintiffs' persons, all of which were done intentionally by Defendant Harvey Weinstein to Plaintiffs without their consent.

286.    As a direct and proximate result of the aforementioned batteries, Plaintiffs have sustained in the past, and will continue to sustain in the future, serious and severe psychological and emotional distress, mental anguish, embarrassment, and humiliation.

287.    As a direct and proximate result of the aforementioned batteries, Plaintiffs have incurred medical expenses and other economic damages, and will be obligated to expend sums of money for further medical care and attention in an effort to alleviate their serious and severe psychological and emotional distress, mental anguish, embarrassment, and humiliation.

288.    Plaintiffs were and will be unable, for some time to come, to pursue their usual activities and employment, all due to the serious and severe psychological and emotional distress, mental anguish, embarrassment, and humiliation they sustained due to the aforementioned batteries.

289.    Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants, principals and/or employees had actual notice that this type of illicit behavior was going on amongst its agents, servants and/or employees, specifically Defendant Harvey Weinstein, yet rather than stop it from continuing, said Defendants ultimately aided and abetted this type of behavior by condoning, directing, encouraging, and/or facilitating the aforementioned batteries that caused the harmful and offensive contact to Plaintiffs that caused them the injuries set forth herein.

290.    As a direct and proximate result of the aforementioned assaults, Plaintiffs have suffered, and continue to suffer from emotional and physical injury, including, but not limited to, serious and severe mental distress, anguish, humiliation and embarrassment, as well as economic losses, those total damages in amounts to be proven at trial.

291.    By reason of the foregoing, Plaintiffs have incurred medical expenses and will continue to be obligated to expend sums of money for medical care and attention in an effort to cure themselves of their injuries. On information and belief, said injuries are of a permanent and lasting nature and have incapacitated Plaintiffs from attending their regular activities, those total damages in amounts to be proven at trial.

292.    As such, Plaintiffs are entitled to compensatory damages from Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10 in such sums as a jury would find fair, just, and adequate. Furthermore, because Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants and/or employees committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of causing injuries to Plaintiffs from an improper and evil motive  amounting to malice and in conscious disregard of Plaintiffs' rights, Plaintiffs are further entitled to punitive and exemplary damages from

Case 1:20-cv-05241 Document 1-1 Filed 07/08/20 Page 62 of 69

Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants and/or employees in such sums as a jury would find fair, just and adequate to deter future similar conduct.

293. The amount of damages sought exceeds the jurisdiction of all lower courts that would otherwise have jurisdiction.

294. This action falls with exceptions to Article 16 of the C.P.L.R.

**As and For a Twenty First Cause of Action for Aiding and Abetting Battery as to Robert Weinstein, Miramax, Disney and Doe Corp. 1-10**

295. Plaintiffs repeat, reiterate and reallege each and every allegation contained in those paragraphs of this complaint marked and designated 1. through 294., inclusive with the same force and effect as if hereafter set forth at length.

296. Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants, principals and/or employees encouraged, permitted, condoned and created a corporate culture, demeanor, state-of-mind, environment and/or mentality where its employees, specifically Defendant Harvey Weinstein, degraded, demeaned, mistreated, assaulted, battered, falsely imprisoned and/or abused women, including Plaintiffs.

297. Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants, principals and/or employees committed overt acts in furtherance of Defendant Harvey Weinstein's batteries upon Plaintiffs with the intention that said batteries be committed.

298. Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants, principals and/or employees' overt acts in furtherance of Defendant Harvey Weinstein's batteries upon Plaintiffs were the proximate and actual causes of said batteries.

299. As a result and consequence of the actions and/or omissions of Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants, principals and/or

Case 1:20-cv-05241   Document 1-1   Filed 07/08/20   Page 63 of 69

employees, Defendant Harvey Weinstein was able to sexually assault, batter, falsely imprison and/or abuse women, including Plaintiffs, without their consent.

300.    Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants, principals and/or employees aided and abetted the batteries of Plaintiffs by Defendant Harvey Weinstein causing damage to Plaintiffs.

301.    Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants, principals and/or employees provided substantial assistance in Defendant Harvey Weinstein batteries of Plaintiffs.

302.    As a direct and proximate result of the aforementioned aiding and abetting of the batteries, Plaintiffs have suffered, and continue to suffer from emotional and physical injury, including, but not limited to, serious and severe mental distress, anguish, humiliation and embarrassment, as well as economic losses, those total damages in amounts to be proven at trial.

303.    By reason of the foregoing, Plaintiffs have incurred medical expenses and will continue to be obligated to expend sums of money for medical care and attention in an effort to cure themselves of their injuries. On information and belief, said injuries are of a permanent and lasting nature and have incapacitated Plaintiffs from attending their regular activities, those total damages in amounts to be proven at trial.

304.    As such, Plaintiffs are entitled to compensatory damages from Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10 in such sums as a jury would find fair, just, and adequate. Furthermore, because Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants and/or employees committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of causing injuries to Plaintiffs from an improper and evil motive  amounting to malice and in conscious disregard of

Case 1:20-cv-05241 Document 1-1 Filed 07/08/20 Page 64 of 69

Plaintiffs' rights, Plaintiffs are further entitled to punitive and exemplary damages from Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants and/or employees in such sums as a jury would find fair, just and adequate to deter future similar conduct.

305.    The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

306.    This action falls within the exceptions to Article 16 of the C.P.L.R.

**As and For a Twenty Second Cause of Action for Battery
as to Robert Weinstein, Miramax, Disney and Doe Corp. 1-10**

307.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in those paragraphs of the Complaint marked and designated 1. through 306., inclusive, with the same force and effect as if hereafter set forth at length.

308.    Prior to their being sexually assaulted and battered by Defendant Harvey Weinstein, Plaintiffs, due to their communications with Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants and/or employees, were under the explicit understanding that their meetings with Defendant Harvey Weinstein were solely related to business.

309.    Despite these statements and implications made by Defendants Harvey Weinstein, Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants and/or employees, these meetings were actually set up so that Defendant Harvey Weinstein could sexually assault, batter, falsely imprison and/or abused Plaintiffs.

310.    Had Plaintiffs known that they were, in reality, being set up to be sexually assaulted, battered, falsely imprisoned and/or abused, they would not have taken the meetings

which is clear by their lack of consent to the sexual activity, contact, and/or touching referenced herein.

311.    As such, this graphic, forced, and unlawful behavior amounted to a series of harmful and offensive contacts to Plaintiffs' persons all of which were committed intentionally by Defendants to Plaintiffs' without their consent.

312.    As a direct and proximate result of the aforementioned batteries, Plaintiffs have sustained in the past, and will continue to sustain in the future, serious and severe psychological and emotional distress, mental anguish, embarrassment, and humiliation.

313.    As a direct and proximate result of the aforementioned batteries, Plaintiffs have incurred medical expenses and other economic damages, and will be obligated to expend sums of money for further medical care and attention in an effort to alleviate their serious and severe psychological and emotional distress, mental anguish, embarrassment, and humiliation.

314.    Plaintiffs were and will be unable, for some time to come, to pursue their usual activities and employment, all due to the serious and severe psychological and emotional distress, mental anguish, embarrassment, and humiliation they sustained due to the aforementioned batteries.

315.    Upon information and belief these injuries are of a permanent and lasting nature, Plaintiffs were, and have been, incapacitated from attending their regular activities and were caused to expend sums of money for medical care on their behalves.

316.    Furthermore, Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants, principals and/or employees had actual notice that this type of illicit behavior was going on amongst its employees, specifically Defendant Harvey Weinstein, yet rather than stop it from continuing, said Defendants ultimately aided and abetted this type of

behavior by condoning, reinforcing, directing, encouraging, and/or facilitating the aforementioned batteries that caused the harmful and offensive contacts to Plaintiffs that caused their injuries set forth herein.

317.    As such, Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants, principals and/or employees not only encouraged said batteries to take place, but their encouragement was also a substantial factor in causing the batteries.

318.    As a direct and proximate result of the aforementioned batteries, Plaintiffs have suffered, and continue to suffer from emotional and physical injury, including, but not limited to, serious and severe mental distress, anguish, humiliation and embarrassment, as well as economic losses, those total damages in amounts to be proven at trial.

319.    By reason of the foregoing, Plaintiffs have incurred medical expenses and will continue to be obligated to expend sums of money for medical care and attention in an effort to cure themselves of their injuries. On information and belief, said injuries are of a permanent and lasting nature and have incapacitated Plaintiffs from attending their regular activities, those total damages in amounts to be proven at trial.

320.    As such, Plaintiffs are entitled to compensatory damages from Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10 in such sums as a jury would find fair, just, and adequate. Furthermore, because Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents, servants and/or employees committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of causing injuries to Plaintiffs from an improper and evil motive  amounting to malice and in conscious disregard of Plaintiffs' rights, Plaintiffs are further entitled to punitive and exemplary damages from Defendants Robert Weinstein, Miramax, Disney and Doe Corp. 1-10, and/or their agents,

servants and/or employees in such sums as a jury would find fair, just and adequate to deter future similar conduct.

321.    The amount of damages sought exceeds the jurisdiction of all lower courts that would otherwise have jurisdiction.

This action falls with exceptions to Article 16 of the C.P.L.R.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in such sum as a jury would find fair, just and adequate and containing the following relief:

A.    A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violated the laws of the State of New York;

B.    An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for all monetary and/or economic harm; harm to their personal and professional reputations and loss of career fulfillment; for all non-monetary and/or compensatory harm including, but not limited to, compensation for physical anguish and mental anguish; and, all other monetary and/or non-monetary losses suffered by Plaintiffs;

D.    An award of punitive and exemplary damages according to proof;

E.    An award of costs that Plaintiffs have incurred in this action, as well as Plaintiffs' reasonable attorneys' fees to the fullest extent permitted by law and statute; and,

F.    Such other and further relief as this Honorable Court may deem just and proper.

Dated: May 28, 2020
           New York, New York

MERSON LAW, PLLC

By: _____ *Jordan Merson* _____

Jordan K. Merson
Jesse R. Mautner
Attorneys for Plaintiffs
150 East 58th Street, 34th Floor
New York, New York 10155
Telephone: (212) 603-9100
Facsimile: (347) 441-4171
jmerson@mersonlaw.com
jmautner@mersonlaw.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
JANE DOE I, JANE DOE II, JANE DOE III and JANE
DOE IV,

                **Plaintiffs,**

       **-against-**

HARVEY WEINSTEIN, ROBERT WEINSTEIN,
MIRAMAX HOLDING CORP., MIRAMAX FILM NY,
LLC f/k/a MIRAMAX FILM CORP., THE WALT
DISNEY COMPANY, DISNEY ENTERPRISES, INC.
and DOE CORP. 1-10,

                **Defendants.**
-------------------------------------------------------------------X

Index No.: _____/20

**ATTORNEY
VERIFICATION**

      **JORDAN K. MERSON, ESQ.**, an attorney duly admitted to practice in the Courts of the State of New York and a member of the firm **MERSON LAW, PLLC**, attorneys for the Plaintiffs in the within action hereby affirms under penalty of perjury:

      That he has read the within Verified Complaint, knows the contents thereof and that the same is true to his own knowledge, except as to the matters stated to be alleged on information and belief, and that as to those matters, he believes them to be true;

      That the sources of his information and knowledge are investigations and records maintained in the file in his office; and,

      That the reason this Attorney Verification is made by him and not by the Plaintiffs is that the Plaintiffs do not reside in the County where he has his office.

Dated: May 28, 2020
       New York, New York

                          *Jordan Merson*
                    _____
                        JORDAN K. MERSON