**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANE DOE I, JANE DOE II, JANE DOE III and JANE DOE IV, | |
| Plaintiffs, | No. 20-cv-05241-GBD |
| v. | |
| HARVEY WEINSTEIN, ROBERT WEINSTEIN, MIRAMAX HOLDING CORP., MIRAMAX FILM NY, LLC f/k/a MIRAMAX FILM CORP., THE WALT DISNEY COMPANY, DISNEY ENTERPRISES, INC. and DOE CORP. 1-10, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**DEFENDANT ROBERT WEINSTEIN'S MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

SCHULTE ROTH & ZABEL LLP

Gary Stein
Brian T. Kohn
Abigail F. Coster

919 Third Avenue
New York, NY 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955

*Attorneys for Defendant Robert Weinstein*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

RELEVANT BACKGROUND .........................................................................................3

ARGUMENT ...................................................................................................................8

I.   REMOVAL IS PROPER BECAUSE THIS ACTION IS RELATED TO THE
WEINSTEIN COMPANY'S BANKRUPTCY CASE ..........................................8

      A.  Mr. Weinstein Has Viable Indemnification and Insurance Claims Against
TWC in Connection with this Action. ...............................................9

      B.  This Action Will Involve Extensive Discovery from the Estate......................15

II.  THE MANDATORY ABSTENTION DOCTRINE IS INAPPLICABLE HERE ..........17

III.  PERMISSIVE ABSTENTION AND EQUITABLE REMAND ARE NOT
WARRANTED IN THIS CASE.....................................................................19

      A.  The Effect on the Efficient Administration of the Bankruptcy Estate
Strongly Supports Retention. .........................................................20

      B.  The Balance of the Remaining Factors Also Support Retention ...................22

IV.  MR. WEINSTEIN'S REMOVAL WAS OBJECTIVELY REASONABLE,
PRECLUDING AN AWARD OF COSTS......................................................24

CONCLUSION.............................................................................................................25

## TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Abbatiello v. Monsanto Co.*,
  No. 06 Civ. 266(KMW), 2007 WL 747804 (S.D.N.Y. Mar. 8, 2007)....................................18

*Allen v. Allen*,
  275 F.3d 1160 (9th Cir. 2002) ........................................................................................18

*Allstate Ins. Co. v. Credit Suisse Secs. (USA) LLC*,
  No. 11 Civ. 2232(NRB), 2011 WL 4965150 (S.D.N.Y. Oct. 19, 2011) .........................15, 24

*Canosa v. Ziff*,
  No. 18 Civ. 4115 (PAE), 2018 WL 3642631 (S.D.N.Y. Aug. 1, 2018) ........................ *passim*

*Canosa v. Ziff*,
  No. 18 Civ. 4115 (PAE), 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019)....................................5

*Cardona v. Mohabir*,
  No. 14 Civ. 1596(PKC), 2014 WL 1804793 (S.D.N.Y. May 6, 2014) .................................25

*Celotex Corp. v. Edwards*,
  514 U.S. 300 (1995)........................................................................................................8, 9

*CMGRP, Inc. v. Agency for the Performing Arts*,
  689 F. App'x 40 (2d Cir. 2017) ..........................................................................................25

*Coleman & Co. Secs., Inc. v. Giaquinto Fam. Tr.*,
  236 F. Supp. 2d 288 (S.D.N.Y. 2002)............................................................................11, 12

*David v. Weinstein Co. LLC*,
  431 F. Supp. 3d 290 (S.D.N.Y. 2019)...............................................................................5, 23

*David v. Weinstein Co. LLC*,
  No. 18-cv-5414 (RA), 2019 WL 1864073 (S.D.N.Y. Apr. 24, 2019) ...............................5, 23

*DeAngelis v. Corzine*,
  501 B.R. 155 (S.D.N.Y. 2012)............................................................................................14

*Dieterly v. Boy Scouts of Am.*,
  Civ. A. No. 20-902, 2020 WL 3447766 (E.D. Pa. June 24, 2020) .......................................19

*Geiss v. Weinstein Co. Hldgs. LLC*,
  383 F. Supp. 3d 156 (S.D.N.Y. 2019).........................................................................5, 13, 23

*Gen. Elec. Capital Corp. v. Pro-Fac Coop., Inc.*,
  No. 01 Civ. 10215 (LTS), 2002 WL 1300054 (S.D.N.Y. June 11, 2002)..............................15

*Gisinger v. Patriarch Partners*,
No. 16 Civ. 1564 (ER), 2016 WL 6083981 (S.D.N.Y. Oct. 18, 2016)...................................15

*Glick v. Creative Grp., LLC*,
No. 13 Civ. 6549 (AT), 2014 WL 12638081 (S.D.N.Y. Apr. 21, 2014)................................23

*Heffernan v. Pac. Dunlop GNB Corp.*,
965 F.2d 369 (7th Cir. 1992) .................................................................................................13

*In re Adelphia Commc'ns Corp.*,
285 B.R. 127 (Bankr. S.D.N.Y. 2002).............................................................................20, 22

*In re Chateaugay Corp.*,
213 B.R. 633 (S.D.N.Y. 1997)...............................................................................................15

*In re Gawker Media LLC*,
571 B.R. 612 (Bankr. S.D.N.Y. 2017)....................................................................................17

*In re Ice Cream Liquidation, Inc.*,
281 B.R. 154 (Bankr. D. Conn. 2002) ....................................................................................18

*In re Manidis*,
Adv. No. 93-0181, 1994 WL 250072 (Bankr. E.D.Pa. May 27, 1994) ..................................18

*In re N. England Compounding Pharm., Inc. Prods. Liab. Litig.*,
496 B.R. 256 (D. Mass. 2013) .........................................................................................17, 18

*In re Purdue Pharms. L.P.*,
No. 20 Civ. 03048 (CM), 2020 WL 4596869 (S.D.N.Y. Aug. 11, 2020) ....................8, 16, 17

*In re Quigley Co.*,
676 F.3d 45 (2d Cir. 2012).......................................................................................................9

*In re Residential Capital, LLC*,
488 B.R. 565 (Bankr. S.D.N.Y. 2013) ............................................................................ 16-17

*In re Residential Capital, LLC*,
536 B.R. 566 (Bankr. S.D.N.Y. 2015)....................................................................................18

*In re River Ctr. Hldgs., LLC*,
288 B.R. 59 (Bankr. S.D.N.Y. 2003) ...............................................................................20, 22

*In re Schacter*,
Adv. No. 05-9404, 2007 WL 2238293 (Bankr. S.D.N.Y. Aug. 1, 2007)................................18

*In re WorldCom, Inc. Sec. Litig.*,
293 B.R. 308 (S.D.N.Y. 2006).......................................................................14, 15, 19, 21, 22

*KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.*,
    600 B.R. 214 (S.D.N.Y. 2019)...................................................................20

*Kirschner ex rel. Refco Private Actions Tr. v. Bennett*,
    No. 07 Civ. 8165 GEL, 2008 WL 1990669 (S.D.N.Y. May 7, 2008)....................................23

*Lalima v. Johnson & Johnson*,
    No. 1:19-CV-0464 (GTS/TWD), 2019 WL 2362362
    (N.D.N.Y. May 24, 2019) ..................................................................... 18-19

*Little Rest Twelve, Inc. v. Visan*,
    458 B.R. 44 (S.D.N.Y. 2011)...................................................................19

*Little Rest Twelve, Inc. v. Visan*,
    829 F. Supp. 2d 242 (S.D.N.Y. 2011)........................................................24

*Loucks v. Cmty. Home Care Servs.*,
    209 A.D.2d 484 (2d Dep't 1994) ............................................................12

*Martin v. Franklin Capital Corp.*,
    546 U.S. 132 (2005).......................................................................24, 25

*Noble v. Weinstein*,
    335 F. Supp. 3d 504 (S.D.N.Y. 2018)........................................................5

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*,
    639 F.3d 572 (2d Cir. 2011).................................................................8

*Pontone v. Milso Indus. Corp.*,
    100 A.3d 1023 (Del. Ch. 2014)...............................................................13

*Qatar v. First Abu Dhabi Bank PJSC*,
    No. 19-CV-5567 (AJN), 2020 WL 206661 (S.D.N.Y. Jan. 14, 2020) ....................................24

*Reed v. Sub-K Hldgs., LLC*,
    105 A.D.3d 1112 (3d Dep't 2013) .........................................................12

*Sokola v. Weinstein*,
    No. 20-cv-0925 (LJL), 2020 WL 3605578 (S.D.N.Y. July 2, 2020).............................. *passim*

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018)..........................................................8, 9, 10, 16, 23

*Winstar Hldgs., LLC v. Blackstone Grp. L.P.*,
    No. 07 Civ. 4634(GEL), 2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007) ................................19

*Witco Corp. v. Beekhuis*,
    38 F.3d 682 (3d Cir. 1994)...................................................................13

**Statutes and Rules**

28 U.S.C. § 157(b) ................................................................................................2, 17, 18

28 U.S.C. § 1334(b) ....................................................................................................1, 8

28 U.S.C. § 1334(c)(1) ..................................................................................................19

28 U.S.C. § 1334(c)(2) ..................................................................................................17

28 U.S.C. § 1447(c) .................................................................................................24, 25

28 U.S.C. § 1452(a) ..............................................................................................5, 8, 24

28 U.S.C. § 1452(b) ......................................................................................................19

N.Y. CPLR 214-g ..........................................................................................................22

Defendant Robert Weinstein ("Mr. Weinstein") respectfully submits this memorandum of law in opposition to Plaintiffs' Motion to Remand this action to the Supreme Court of the State of New York, County of New York (the "State Court").

## PRELIMINARY STATEMENT

Plaintiffs have no choice but to concede that 28 U.S.C. § 1334(b) grants federal courts jurisdiction over any action that is "related to" any pending bankruptcy case, which, under controlling Supreme Court and Second Circuit precedent, requires only that the action might have *any conceivable effect* on the pending bankruptcy case. Here, because Mr. Weinstein has asserted valid claims in connection with this action against The Weinstein Company Holdings, LLC (together with its affiliates, "TWC" or the "Company") for contractual indemnification and insurance coverage, this action is virtually certain to directly impact the administration of TWC's chapter 11 case, including the amount available for distributions to its creditors. As this action is therefore "related to" TWC's bankruptcy case, Plaintiffs' motion to remand should be denied.

Plaintiffs' argument in support of remand rests in large part on a single, fundamental misconception—that because they have not sued TWC itself, this action cannot be "related to" TWC's bankruptcy case. But that argument finds no support in the law. Indeed, as set forth below, courts repeatedly have found actions "related to" bankruptcy cases based solely on the existence of a non-debtor's viable indemnification claims against a debtor, and, in light of Mr. Weinstein's indemnification and insurance claims relating to this action, those cases are directly on point here. Plaintiffs' argument also is belied by the Complaint's allegations, which describe how Harvey Weinstein purportedly assaulted two of the four Plaintiffs during the period in which he and Mr. Weinstein were employed by TWC. As further set forth below, the timing of those alleged assaults and the nature of the claims against Mr. Weinstein, which necessarily

depend upon his affiliation with TWC, leave no doubt that TWC is obligated to indemnify Mr. Weinstein, and, therefore, this action *will* have an effect on the TWC bankruptcy case.

Nevertheless, Plaintiffs repeatedly—and misleadingly—insist that this Court should follow Judge Liman's recent decision granting the plaintiff's motion to remand in *Sokola v. Weinstein*, No. 20-cv-0925 (LJL), 2020 WL 3605578 (S.D.N.Y. July 2, 2020). But not only does Judge Liman's decision provide no support for Plaintiffs' position, it actually supports denial of their motion. Indeed, Judge Liman distinguished the complaint in *Sokola*—which he found to contain not a single allegation about conduct that purportedly took place while TWC was in business—with a situation where Harvey Weinstein's alleged assaults took place at times he was actually employed by TWC. *See id.* at *10. That is precisely the situation here—as it was in *Canosa v. Ziff*, No. 18 Civ. 4115 (PAE), 2018 WL 3642631 (S.D.N.Y. Aug. 1, 2018), in which Judge Engelmayer found "related to" jurisdiction over a case brought by another of Harvey Weinstein's accusers and denied her motion to remand.

Plaintiffs' alternative arguments that this Court should abstain from exercising jurisdiction or equitably remand this case fare no better. Plaintiffs' reliance on the doctrine of mandatory abstention overlooks 28 U.S.C. § 157(b), which expressly exempts personal injury tort claims, such as those asserted in the Complaint here, from the doctrine's scope. And not even one of the relevant factors courts in this Circuit consider in deciding whether to take the rare step of equitably remanding a case supports doing so here—as Judge Engelmayer also found in *Canosa* when faced with substantially similar circumstances.

For all of these reasons and those set forth below, Plaintiffs' motion should be denied in its entirety.

## RELEVANT BACKGROUND

The Instant Action

This action is one of a series of civil lawsuits that have been filed by women who allege they were assaulted by Harvey Weinstein.  The Complaint (ECF No. 1-1)[1] names as defendants not only Harvey Weinstein, but also Mr. Weinstein, Miramax Holding Corp., Miramax Film NY, LLC, The Walt Disney Company and Disney Enterprises, Inc. (together, "Disney"), and, as "Doe Corp." defendants, certain purported "successor and related entities of Miramax and Disney that employed Harvey Weinstein during the relevant time period."  (¶ 21.)

As set forth in the Complaint, in the late 1970s, Mr. Weinstein and his older brother Harvey Weinstein created an independent film-distribution company called Miramax Film Corp. ("Miramax").  (¶ 15.)  In 1993, the Weinsteins sold Miramax to Disney, but remained at the company, where Mr. Weinstein was employed as an executive officer.  (¶¶ 15, 34, 103-04, 121-22.)  The Weinsteins left Miramax in September 2005 to form their own production company, TWC.  (¶ 15.)  Mr. Weinstein served as an officer and director of TWC from that point up through TWC's filing for bankruptcy in 2018.  (*See infra* p. 6.)

The Complaint alleges that Harvey Weinstein sexually assaulted (i) Plaintiff Jane Doe I in 1984; (ii) Plaintiff Jane Doe II in 1994; (iii) Plaintiff Jane Doe III in 2008; and (iv) Plaintiff Jane Doe IV in 2013, and after each alleged incident, took steps aimed at intimidating each Plaintiff into staying silent about his alleged misconduct, causing each Plaintiff physical injury, emotional distress, economic harm, and other damages.  (*See generally* ¶¶ 39-94.)

---

[1] Citations in the form "¶ __" refer to paragraphs of the Complaint.  Citations in the form "Pl. Br. __" refer to pages of Plaintiffs' Memorandum of Law in Support of their Motion to Remand (ECF No. 14).  Citations to the "Stein Decl." refer to the accompanying Declaration of Gary Stein filed contemporaneously herewith.

In the Complaint, each Plaintiff asserts causes of action against Harvey Weinstein for assault, battery, false imprisonment, and intentional infliction of emotional distress.  (¶¶ 130-245.)  In addition, each Plaintiff asserts causes of action against the remaining defendants—including Mr. Weinstein—for assault and battery on a *respondeat superior* theory and for aiding and abetting Harvey Weinstein's tortious assaults and batteries, based on their alleged failures to exercise control over Harvey Weinstein or put in place a better system of corporate oversight. (¶¶ 271-321.)  Each Plaintiff also asserts causes of action against Mr. Weinstein and the corporate defendants for (i) negligence and (ii) negligent hiring, supervision, and retention, again predicated on allegations of inaction—specifically, that these Defendants enabled Harvey Weinstein's torts by not firing Harvey Weinstein and by failing to restrict Harvey Weinstein's access to corporate resources.  (¶¶ 246-70.)

Of particular relevance here, Plaintiffs Jane Doe III and Jane Doe IV allege that they were assaulted in, respectively, 2008 and 2013 (¶¶ 62, 78), after Harvey Weinstein and Mr. Weinstein had left Miramax to head up TWC (¶¶ 5, 15).  Their claims against Mr. Weinstein center on allegations that he failed to adequately supervise Harvey Weinstein, that he contributed to a corporate culture that enabled Harvey Weinstein's alleged assaults, and that, as Harvey Weinstein's purported employer, he is vicariously liable for Harvey Weinstein's tortious acts. (*See, e.g.*, ¶¶ 3-5, 7, 247-53, 260-65, 272, 284-85, 289, 296, 308-11, 316-17.)

Both Jane Doe III and Jane Doe IV also allege they had unspecified communications with Mr. Weinstein "and/or [his] agents, servants and/or employees" before they were assaulted that led them to believe that their meetings with Harvey Weinstein were solely related to business. (¶¶ 308-09.)  Neither Jane Doe III nor Jane Doe IV alleges she had any contact with Harvey Weinstein, Mr. Weinstein, or anyone else prior to the time the Weinsteins were at TWC.

4

<u>Related Actions in this District</u>

There are a number of other cases pending in this District asserting claims against Harvey Weinstein and various other individuals and entities seeking redress in connection with alleged sexual assaults committed by Harvey Weinstein.  These cases include *Geiss v. The Weinstein Company Holdings LLC*, No. 17 Civ. 9554 (AKH) (S.D.N.Y.); *Noble v. Weinstein*, No. 17 Civ. 9260 (AN) (S.D.N.Y.); *Canosa v. Ziff*, No. 18 Civ. 4115 (PAE) (S.D.N.Y.); and *David v. The Weinstein Company, LLC*, No. 18 Civ. 5414 (RA) (S.D.N.Y.).

Like the instant action, each of these cases involves claims by women who allege they were sexually assaulted after 2005 when Harvey Weinstein was employed by TWC.  Also like the instant action, the *Canosa* and *David* cases were initially filed in state court (in, respectively, New York and California) and then removed to federal court pursuant to 28 U.S.C. § 1452(a) on the ground that they were related to the TWC bankruptcy.  *See Canosa*, 2018 WL 3642631, at *3, *9 (denying motion to remand); *David v. Weinstein Co. LLC*, No. 18 Civ. 5414 (RA), 2019 WL 1864073, at *3 (S.D.N.Y. Apr. 24, 2019) (noting removal, which was unopposed).

The judges in each of these cases have granted Mr. Weinstein's motions to dismiss claims substantially similar to those asserted against him here, including claims for *respondeat superior* liability, aiding and abetting, negligence, and negligent supervision, hiring, and retention.[2]  Claims against Harvey Weinstein and/or TWC, on the other hand, remain pending in this District in each of the *Geiss*, *Noble*, *Canosa*, and *David* cases.

---

[2] *See Geiss v. Weinstein Co. Hldgs. LLC*, 383 F. Supp. 3d 156, 162 (S.D.N.Y 2019) (dismissing, *inter alia*, *respondeat superior* and negligent supervision claims); *David v. Weinstein Co.*, 431 F. Supp. 3d 290, 305-10 (S.D.N.Y. 2019) (dismissing negligence claim); *David*, 2019 WL 1864073, at *6-8 (dismissing negligence and negligent supervision claims); *Canosa v. Ziff*, No. 18 Civ. 4115 (PAE), 2019 WL 498865, at *1, *5 (S.D.N.Y. Jan. 28, 2019) (dismissing, *inter alia*, *respondeat superior*, aiding and abetting, and negligent supervision claims); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 523-36 (S.D.N.Y. 2018) (dismissing, *inter alia*, claims against Mr. Weinstein for aiding and abetting violations of federal sex trafficking statute).

Against this backdrop, it is obvious why Plaintiffs—only one of whom alleges residency in New York (¶¶ 11-14)—seek remand to the State Court here.  That is also presumably why Plaintiffs' brief makes virtually no mention of these pending cases, despite, on the other hand, devoting considerable attention to another Weinstein-related sexual assault case that was removed but then remanded back to State Court:  *Sokola v. Weinstein*, Index No. 950250/2019 (Sup. Ct. N.Y. Cty.).  As noted above and explained further below, that case is readily distinguishable from this one.  Unlike here, the sole plaintiff in *Sokola* alleged Harvey Weinstein assaulted her in 2002, prior to the formation of TWC, and in granting the motion to remand, the District Court read the allegations of the complaint as limited entirely to pre-TWC events and occurrences.  *See Sokola*, 2020 WL 3605578, at *10-11.

The TWC Bankruptcy

On March 19, 2018, TWC and various of its affiliates filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), commencing chapter 11 cases jointly administered under the caption *In re The Weinstein Company Holdings LLC, et al.*, No. 18-10601 (MFW) (Bankr. D. Del.) (the "Bankruptcy Case").  The Bankruptcy Case remains pending before the Bankruptcy Court.

Potential liabilities relating to Harvey Weinstein's alleged sexual misconduct are of critical importance to the administration of TWC's estate in the Bankruptcy Case.  That is because of the multitude of claims brought by alleged victims of Harvey Weinstein (as well as by the New York Attorney General) against TWC and many of its former officers and directors (including Harvey Weinstein and Mr. Weinstein).  TWC's former officers and directors have asserted claims for indemnification against TWC as a result of being named in such actions, and

also have made claims for insurance coverage in connection with these actions under directors'
and officers' liability ("D&O") policies issued to TWC.  *See Canosa*, 2018 WL 3642631, at *4.
All such claims—whether asserted by Harvey Weinstein's accusers or by defendants in actions
brought by those accusers—will invariably affect the administration of the Bankruptcy Case and
the amount of assets available for distribution to TWC's creditors.[3]

<u>Mr. Weinstein's Indemnification and Insurance Claims</u>

On February 11, 2019, Mr. Weinstein filed proofs of claim in the Bankruptcy Case for, as
relevant here, (i) indemnification arising out of the Third Amended and Restated Limited
Liability Company Agreement of The Weinstein Company Holdings, LLC, dated as of October
21, 2005 (the "TWC LLC Agreement") and Mr. Weinstein's employment agreement with The
Weinstein Company Holdings, LLC, dated as of June 30, 2015 (the "TWC Employment
Agreement"), and (ii) his allocable share of the proceeds of insurance policies held by TWC.
These indemnification and insurance claims were expressly made in connection with any legal
fees and/or judgments incurred by Mr. Weinstein in pending or future actions arising out of
Harvey Weinstein's alleged sexual misconduct.  (*See* Stein Decl., Exs. A-B.)

Among other things, all of the claims of Janes Does III and IV in this action are
predicated on alleged assaults that Harvey Weinstein committed against them in, respectively,
2008 and 2013 (¶¶ 62, 78, 189, 218), during the period Harvey Weinstein and Mr. Weinstein

---

[3] As noted in Mr. Weinstein's Notice of Removal filed on July 8, 2020 (ECF No. 1), on June 29, 2020, numerous parties—including a large number of Harvey Weinstein's known accusers, the persons named as defendants in the various actions those accusers have brought (including Mr. Weinstein), the New York Attorney General, TWC's insurers, insurers for other entities, trade creditors of TWC, and the TWC estate—finalized and executed a settlement agreement (the "Proposed Settlement").  The Proposed Settlement was submitted to the District Court overseeing the putative *Geiss* class action for preliminary approval, which the Court denied on July 14, 2020.  *See Geiss*, ECF No. 353 (filed July 14, 2020).  Nevertheless, the parties continue to negotiate the terms of a revised agreement to be incorporated into a liquidation plan and which will be implemented solely through the Bankruptcy Court-supervised plan process.  *See Canosa*, ECF No. 255 (filed Aug. 13, 2020).  The Bankruptcy Court has given TWC until August 31, 2020 to submit the liquidation plan containing the revised settlement.  (*Id.*)

were employed by TWC (¶ 15).  Mr. Weinstein's claim for indemnification by TWC in connection with actions relating to Harvey Weinstein's alleged sexual misconduct therefore covers the instant action.  In addition, Mr. Weinstein has also submitted claims for coverage in connection with this action to TWC's D&O carriers.

## ARGUMENT

### I.    REMOVAL IS PROPER BECAUSE THIS ACTION IS "RELATED TO" THE WEINSTEIN COMPANY'S BANKRUPTCY CASE.

Removal is proper under Section 1452(a) of Title 28 of the U.S. Code, which provides that "[a] party may remove any claim or cause of action in a civil action … to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."  Section 1334(b), in turn, confers jurisdiction upon this Court to hear all civil proceedings "arising under title 11, or arising in or related to cases under title 11," *i.e.*, the Bankruptcy Code.  Accordingly, where an action is—like this one—"related to" a bankruptcy proceeding, it is removable from state court to federal court.

As Plaintiffs themselves recognize (Pl. Br. 6), it is well-established in the Second Circuit that "related to" jurisdiction exists "if the action's outcome might have *any conceivable effect* on the bankrupt estate," *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 339-40 (2d Cir. 2018) (quoting *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011)) (emphasis added); *see also Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995) ("An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."); *In re Purdue Pharms. L.P.*, No. 20 Civ. 03048 (CM), 2020 WL 4596869, at *8 (S.D.N.Y. Aug. 11, 2010) ("conceivable effects" test satisfied where

"one possible result of the suit 'will be the removal of assets from the bankruptcy estate'")
(quoting *In re Quigley Co.*, 676 F.3d 45, 57 (2d Cir. 2012)).

Thus, "[a] claim need not be certain to provide a federal court with jurisdiction:
'contingent outcomes can satisfy the 'conceivable effects' test, so long as there is the *possibility*
of an effect on the estate.'"  *SPV Osus*, 882 F.3d at 340 (emphasis in original) (citations omitted).
Moreover, "[w]hile 'related to' jurisdiction is not 'limitless,' it is fairly capacious, and includes
'suits between third parties'"—*i.e.*, in which the debtor is *not* a party—so long as they might
"'have an effect on the bankruptcy estate.'"  *Id.* (quoting *Celotex*, 514 U.S. at 307-08 & n.5).
Thus, the fact that Plaintiffs have not named TWC in no way defeats related-to jurisdiction.

The instant action is "related to" the Bankruptcy Case because it not only could
conceivably have an effect on TWC's estate and distributions to its creditors, but is virtually
certain to have such an effect.  Because Plaintiffs' allegations include conduct that took place
during the period both Weinsteins were officers and directors of TWC, Mr. Weinstein and his
co-defendant brother have reasonable claims for indemnification (including advancement of their
attorneys' fees) against TWC and its insurance carriers.  In addition, such allegations will very
likely lead to onerous discovery demands on the TWC estate, thereby depleting its scarce
available assets which would otherwise be available to pay the claims of its creditors.[4]

### A.    Mr. Weinstein Has Viable Indemnification and Insurance Claims Against TWC in Connection with this Action.

Courts have found that claims by non-debtor defendants for indemnification (or
contribution) against a debtor give rise to "related to" jurisdiction provided there is a

---

[4] Because the District Court denied preliminary approval of the Proposed Settlement the week after Mr. Weinstein
filed his Notice of Removal (*see supra* n.3), and because a revised settlement has yet to be finalized (*see id.*), Mr.
Weinstein does not rely on the Proposed Settlement as a basis for removal, but instead focuses on his
indemnification claims against TWC and the TWC-related discovery that will flow from this action (*see* Not. Rem.
¶¶ 21-22) as support for this Court's jurisdiction.

"'reasonable' legal basis for the claim." *SPV Osus*, 882 F.3d at 340 (citation omitted); *accord,*

*e.g.*, *Canosa*, 2018 WL 3642631, at *4.  This standard is easily satisfied here.

Mr. Weinstein has asserted a claim for indemnification against TWC covering all actions

arising out of Harvey Weinstein's alleged sexual misconduct, which includes this action.  Under

Paragraph 7 of the TWC Employment Agreement, Mr. Weinstein is entitled to be

> fully indemnified and held harmless by … [TWC] to the fullest extent permitted
> by law from any claim, liability, loss, cost or expense of any nature (including
> attorney's fees of counsel selected by [Mr. Weinstein], judgments, fines, any
> amounts paid or to be paid in any settlement, and all costs of any nature) incurred
> by [Mr. Weinstein] … , which arises, directly or indirectly, in whole or in part out
> of any alleged or actual conduct, action or inaction on [Mr. Weinstein's] part in or
> in connection with or related in any manner to [Mr. Weinstein's] status as an
> employee, agent, officer, corporate director, member, manager, shareholder,
> partner of, or [Mr. Weinstein's] provision of services to, [TWC] or any of its
> affiliated entities[.]

(Stein Decl., Ex. A, at Addendum ¶ 6.)  Further, under Section 10.02 of the TWC LLC

Agreement, Mr. Weinstein—as a member, executive officer, and director of TWC—is entitled to

be indemnified and held harmless by TWC against

> any losses, claims, damages, liabilities, expenses (including all reasonable fees and
> expenses of counsel), judgments, fines, settlement, and other amounts arising from
> any and all claims, demands, actions, suits or proceedings, in which [Mr.
> Weinstein] may be involved or become subject to, in connection with any matter
> arising out of or in connection with [TWC]'s business or affairs.

(*Id.* at Addendum ¶ 4; *see also id.* at Addendum ¶ 5 (definition of "Covered Person").)

These provisions plainly embrace the instant action, giving Mr. Weinstein a "reasonable

legal basis" to claim indemnification from TWC in connection with it.  Contrary to Plaintiffs'

protestations that their claims are "unrelated to TWC's operations" and to "[Mr.] Weinstein's[]

role with TWC or its affiliates" (Pl. Br. 7-8), the actual allegations of their Complaint—which

Plaintiffs admit are what matter for purposes of removal jurisdiction (*id.* at 3)—paint a different

story.

10

The Complaint specifically alleges that Harvey Weinstein sexually assaulted Plaintiff Jane Doe III in 2008 and Plaintiff Jane Doe IV in 2013 (*see* ¶¶ 62, 78)—years after 2005, when the Weinsteins left Miramax and founded TWC (¶ 15).  Further, these two Plaintiffs allege that their encounters with Harvey Weinstein occurred in connection with him having promised to secure them roles in TWC projects (*see, e.g.*, ¶¶ 63, 81), and were scheduled or otherwise facilitated by the Company's employees (¶¶ 64, 79-80, 308-10).

Moreover, the claims asserted by Jane Doe III and Jane Doe IV against Mr. Weinstein necessarily implicate his position as a corporate executive of TWC.  Their negligence-based claims (Counts 17 and 18) are expressly predicated on Mr. Weinstein's purported "negligent hiring, retention and/or supervision of Harvey Weinstein" (¶¶ 247, 260) and allege that Mr. Weinstein breached his duty of care to Plaintiffs by "improperly hir[ing] and continu[ing] to employ Harvey Weinstein" and "failing to terminate Harvey Weinstein's employment" (¶¶ 251, 263).  Mr. Weinstein is specifically accused of "allow[ing] Harvey Weinstein to have unfettered authority and endless resources"—*i.e.*, authority and resources within TWC—"such that he was enabled and permitted to engage in sexual misconduct with female employees and actresses"—*i.e.*, TWC's employees and TWC's actresses—"including the Plaintiffs."  (¶¶ 249, 262.)

As relevant to Jane Doe III and Jane Doe IV, these allegations can only sensibly be understood as charging Mr. Weinstein with negligently retaining and supervising Harvey Weinstein *at TWC* in Mr. Weinstein's capacity as an officer and director *of TWC*.  Plaintiffs could not possibly claim that Mr. Weinstein, based on his prior affiliation with *Miramax*, is somehow liable for "negligently supervising" Harvey Weinstein when they were both at TWC. (*See* ¶ 15.)  It is axiomatic that a *former* employer cannot be held liable for negligently "supervising" an employee after he has left its employ.  *See, e.g., Coleman & Co. Secs., Inc. v.*

*Giaquinto Fam. Tr.*, 236 F. Supp. 2d 288, 304 (S.D.N.Y. 2002) (Chin, J.); *Reed v. Sub-K Hldgs.*, *LLC*, 105 A.D.3d 1112, 1112-13 (3d Dep't 2013).

The same is true of Jane Doe III's and Jane Doe IV's vicarious liability claims for assault and battery against Mr. Weinstein (Counts 20 and 22).  Plaintiffs allege that Harvey Weinstein was "acting within the scope of his employment" when he assaulted them (¶ 5) and that Mr. Weinstein is liable for these assaults because he purportedly "allowed, encourage[d] and created the corporate culture and environment" that enabled Harvey Weinstein to commit these acts and "turned a blind-eye" to the unlawful behavior of his "employees, specifically Harvey Weinstein" (¶¶ 284-85; *see also* ¶¶ 308, 316).  Here again, Mr. Weinstein's affiliation with TWC is indispensable to Jane Doe III's and Jane Doe IV's claims.  Vicarious liability claims are, of course, viable *only* against the current employer of the tortfeasor.  *See Coleman*, 236 F. Supp. 2d at 303-05; *Loucks v. Cmty. Home Care Servs.*, 209 A.D.2d 484, 484-85 (2d Dep't 1994).[5]

Nor is that all.  All four Plaintiffs' claims here—including those of Jane Does I and II— implicate conduct at TWC in yet another respect.  Plaintiffs all assert that their claims, which on their face are barred by the applicable statutes of limitations, are still timely pursuant to, among other things, the doctrine of equitable estoppel.  (¶¶ 48-53, 60, 72-77, 89-94.)  According to the Complaint, this is because Defendants—including Mr. Weinstein—engaged in "affirmative wrongdoing" amounting to "fraud, misrepresentation, threat[s], or deception" after the alleged assaults that purportedly caused Plaintiffs to refrain from filing a timely action.  (¶¶ 49-50, 73-74, 90-91.)  Critically, these allegations are meaningless unless Plaintiffs can show that Mr.

---

[5] Mr. Weinstein's affiliation with TWC is just as central to these two Plaintiffs' aiding and abetting claims against him (Counts 19 and 21).  (*See, e.g.*, ¶¶ 272, 296 ("Defendant[] [Mr.] Weinstein ... and/or [his] agents, servants and/or employees encouraged, permitted, condoned and created a corporate culture[] ... where its employees, specifically Defendant Harvey Weinstein, could and did degrade, demean, mistreat, assault, batter, falsely imprison and/or abuse women, including Plaintiffs, all without any negative consequences or repercussions.").)

Weinstein made such representations or threats *continuing into the limitations period*, *see Geiss*, 383 F. Supp. 3d at 174-75 & n.12, *i.e.*, during his tenure as an officer and director of TWC.

All these allegations predicated on Mr. Weinstein's position with, and purported acts and failures to act while at, TWC are more than enough to give Mr. Weinstein a "reasonable legal basis" to seek contractual indemnification from TWC. *See, e.g.*, *Witco Corp. v. Beekhuis*, 38 F.3d 682, 692-93 (3d Cir. 1994) (Delaware indemnification statute extends to litigation against an officer or director so long as it "ha[s] a nexus to his corporate position," even where there are allegations and a viable legal basis supporting "personal liability" divorced from such position).[6]

Judge Engelmayer's decision in *Canosa* is squarely on point.  In that case, the plaintiff brought a variety of state common law and statutory claims against Mr. Weinstein (as well as a number of other TWC directors), all stemming from allegations that she was subjected to acts of sexual misconduct by Harvey Weinstein between 2010 and 2015.  *Canosa*, 2018 WL 364631, at *1-2.  Judge Engelmayer easily concluded that such claims were sufficiently related to "[TWC]'s business or affairs," *id.* at *4 (quoting TWC LLC Agreement § 10.02), and thus "clearly" gave the Weinsteins (and the rest of the TWC directors) "a reasonable legal basis for a claim on [TWC's] estate" for indemnification in connection with the litigation, *id.* at *4-5.

Moreover, as Judge Engelmayer also noted, the proceeds of TWC's D&O insurance policies may be considered property of the TWC estate, *see id.* at *5-6, as Plaintiffs themselves acknowledge (Pl. Br. 9).  Just as in *Canosa*, the types of allegations made here—*i.e.*, allegations implicating Mr. Weinstein's actions (or inaction) during the period he and Harvey Weinstein

---

[6] *See also Heffernan v. Pac. Dunlop GNB Corp.*, 965 F.2d 369, 374-75 (7th Cir. 1992) (Delaware law permits D&O indemnification where suit stems "at least in part" from officer or director status); *Pontone v. Milso Indus. Corp.*, 100 A.3d 1023, 1050 (Del. Ch. 2014) (Delaware D&O statute is "interpreted broadly and in favor of indemnification and advancement," and is satisfied so long as "there is a nexus or causal connection between any of the underlying proceedings ... and one's official corporate capacity ..., without regard to one's motivation for engaging in th[e] conduct [at issue]") (citations omitted).

were officers and directors of TWC—give Mr. Weinstein a "'reasonable legal basis for [his] claim[s]' to draw upon [TWC's] insurance polic[ies], which is [in turn] sufficient to invoke this Court's related-to jurisdiction." *Canosa*, 2018 WL 3642631, at *6 (quoting *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 319 (S.D.N.Y. 2003)).[7]  Accordingly, the Court denied Canosa's motion to remand the action to state court. *Id.* at *9.  The same result is compelled here.

Plaintiffs seek to escape that result by arguing that this case is "more similar to *Sokola* than *Canosa*" (Pl. Br. 6), in that, like the plaintiff in *Sokola*, they have not "asserted [claims] ... related to [Mr.] Weinstein's role as a TWC officer, director, employee, or agent" (*id.* at 7 (quoting *Sokola*, 2020 WL 3605578, at *10)).  But as noted above, Jane Doe III's and Jane Doe IV's claims necessarily *are* related to Mr. Weinstein's role with TWC.[8]  By contrast, in *Sokola*, the plaintiff's claims were predicated on a single act of sexual misconduct by Harvey Weinstein, which was alleged to have occurred *in 2002—i.e.*, several years before TWC even came into existence.  Moreover, the District Court found that the plaintiff "ha[d] not alleged any conduct that dates into the years after TWC was incorporated." *Sokola*, 2020 WL 3605578, at *10. Critically, Judge Liman distinguished the case before him as "meaningfully different" from *Canosa* which, like this one, alleged sexual misconduct during TWC's lifetime, *id.* at *10—and noted that in such cases Mr. Weinstein *would* have a sufficiently viable indemnification claim that would "no doubt" supply a basis for related-to jurisdiction, *id.* at *9-10.[9]

---

[7] Additionally, Harvey Weinstein, the primary tortfeasor and one of Mr. Weinstein's co-defendants in this action, has the same contractual indemnification and insurance rights as Mr. Weinstein.  (Stein Decl., Ex. C.)  Thus, the impact on the TWC estate will be magnified beyond the substantial impact from Mr. Weinstein's claims alone, as Judge Engelmayer also found in *Canosa*. *See Canosa*, 2018 WL 3642631, at *5.

[8] Plaintiffs' attempts to disavow these allegations for purposes of this remand motion must be disregarded. *See, e.g.*, *DeAngelis v. Corzine*, 501 B.R. 155, 159 (S.D.N.Y. 2012) (finding related-to jurisdiction based on indemnification claims where, despite plaintiff's denials, it was "inherent in [plaintiff]'s complaint" that defendant directors were sued in their capacity as board members in relation to alleged mismanagement of employee stock option plan).

[9] The cases other than *Sokola* that Plaintiffs cite to support their assertion that Mr. Weinstein's indemnification and insurance claims are too uncertain or speculative to satisfy the "conceivable effects" test (*see* Pl. Br. 5-6, 9-10) are

**B.      This Action Will Involve Extensive Discovery from the Estate.**

Litigation of this action will impact (or, at the very least, could impact) the TWC estate in other ways, as well—in particular, by requiring discovery from the estate itself.  As set forth above, Jane Does III and IV expressly allege they were assaulted by Harvey Weinstein while he was at TWC, and that these assaults were, *inter alia*, facilitated through the use of TWC personnel and resources.  (*See supra* § I(A); ¶¶ 3, 5, 15, 62, 64, 78-80, 189, 218, 249, 262.)  In addition, the equitable estoppel arguments on which all four Plaintiffs rely would necessarily require them to introduce evidence of fraud, deceit, or threats directed against each of them during the period the Weinsteins worked for TWC.  (*See supra* § I(A).)  Further, the Complaint makes allegations *directly against TWC* for "participat[ing]" in, "facilitat[ing]," "ratif[ying]," and "conceal[ing]" Harvey Weinstein's alleged acts of sexual misconduct.  (¶¶ 1, 3-5; *see also* ¶¶ 50-51, 74-75, 92-93.)

These allegations make clear that discovery in this action will encompass TWC documents and testimony from TWC witnesses relating to, *inter alia*, interactions between Plaintiffs, Harvey Weinstein and other TWC employees, and actions by TWC's so-called "army of spies" (*see* ¶ 4) to prevent Plaintiffs and other women from pursing legal remedies or publicly airing accusations against Harvey Weinstein.  And such discovery will, in turn, impact the TWC

---

likewise distinguishable.  In *In re Chateaugay Corp.*, 213 B.R. 633, 639-40 (S.D.N.Y. 1997), which involved successor liability claims against the purchaser of chapter 11 debtor's assets, the Court noted the general rule that "reasonable" indemnity claims suffice for purposes of related-to jurisdiction, but found that that standard had not been met where purchaser-defendant failed to provide "any articulated legal basis"—whether by virtue of a contract or otherwise—that could support such a claim.  The Court in *Allstate Insurance Co. v. Credit Suisse Securities (USA) LLC*, No. 11 Civ. 2232(NRB), 2011 WL 4965150, at *4, *6 (S.D.N.Y. Oct. 9, 2011), found there to be no related-to jurisdiction because the defendants in the case had not actually filed proofs of claim assreting their indemnification rights against any of the debtor-entities.  And *General Electric Capital Corp. v. Pro-Fac Cooperative, Inc.*, No. 01 Civ. 10215 (LTS), 2002 WL 1300054, at *2 (S.D.N.Y. June 11, 2002), unlike this case, did not involve any claims by the defendants for attorneys' fees, and in any event has been criticized and disagreed with by other courts in this District, *see Gisinger v. Patriarch Partners*, No. 16 Civ. 1564 (ER), 2016 WL 6083981, at *3 (S.D.N.Y. Oct. 18, 2016); *In re WorldCom*, 293 B.R. at 318.

estate—which possesses and controls TWC documents and records—by imposing burdens in terms of both cost and devotion of time, and may also trigger additional claims for indemnification and/or insurance coverage by other TWC officers, directors, and employees who may be subpoenaed for documents or deposition. *See Canosa*, 2018 WL 3642631, at *5 & n.6; *In re Purdue*, 2020 WL 4596869, at *3 (upholding bankruptcy court's exercise of related-to jurisdiction where, among other things, the plaintiffs "could not try [their] case against [the debtors' President and Chairman] without involving [the debtors] in discovery and related matters, which would impose costs on the [d]ebtors['] estate").

Here again, Plaintiffs wrongly invoke *Sokola* to contend that there is merely a "remote" chance this case will entail discovery from TWC. (Pl. Br. 9.) Unlike the Complaint here, the complaint in *Sokola* "d[id] not even mention [TWC]," *Sokola*, 2020 WL3605578, at *12, and Judge Liman found that it "contain[ed] no allegations against [Mr.] Weinstein—or any of the Defendants—in connection with the TWC time period, ... [or] indicate[d] that the possibility he w[ould] be called upon to give testimony or provide documents in th[e] action with respect to that time period [wa]s anything but speculative," *id.* at *11; *see also id.* at *12 ("The Court ... is hard-pressed to understand how such discovery of conduct after 2005 could even be relevant to Plaintiff's assertion of her claim against [Mr.] Weinstein.").

*     *     *

In sum, in the context of "related to" jurisdiction, the foregoing reasons are more than sufficient to satisfy the Second Circuit's "conceivable effect" test. *See SPV Osus*, 881 F.3d at 340 (claim for indemnification "need not be certain," but only raise "the *possibility* of an effect on the estate" for related-to jurisdiction) (emphasis in original); *In re Residential Capital, LLC*, 488 B.R. 565, 573 (Bankr. S.D.N.Y. 2013) ("To have a 'conceivable effect' on a bankruptcy

16

estate, 'certainty, or even likelihood, is not required.'") (citation omitted); *In re Purdue*, 2020 WL 4596869, at \*11 ("Each of those arguments ignores the low bar that the potential for an indemnification claim must meet in order to create 'related to' jurisdiction over third party litigation in this Court."). Thus, Plaintiffs' motion must be denied.

## II.     THE MANDATORY ABSTENTION DOCTRINE IS INAPPLICABLE HERE.

Plaintiffs argue that, at least with respect to Plaintiff Jane Doe III, this Court is required to remand Plaintiffs' claims to the State Court pursuant to the mandatory abstention doctrine. (Pl. Br. 8.)  Plaintiffs are wrong:  Mandatory abstention does not apply in this case.

The mandatory abstention provision, 28 U.S.C. § 1334(c)(2), is limited in an important way in section 157, which provides that "[n]on-core proceedings under section 157(b)(2)(B) ... shall not be subject to the mandatory abstention provisions of section 1334(c)(2)."  28 U.S.C. § 157(b)(4).  Section 157(b)(2)(B), in turn, defines non-core claims to include "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11."  In other words, mandatory abstention does not apply to cases asserting "personal injury tort ... claims against the estate."[10]  That is precisely the case here.

*First*, the claims in this case—all of which are predicated on allegations of forcible sexual assault—qualify as "personal injury tort" claims.  Courts in the Second Circuit and elsewhere are divided as to what constitutes a "personal injury tort" claim in this context, employing three different tests.  *See generally In re Gawker Media LLC*, 571 B.R. 612, 619-23 (Bankr. S.D.N.Y. 2017).  This case, however, plainly satisfies even the most restrictive of these tests—which

---

[10] In enacting these provisions, Congress intended to give federal judges greater discretion in personal injury and wrongful death cases given their unique potential to result in large verdicts, and thereby have detrimental effects on debtors' estates.  *See In re N. England Compounding Pharm., Inc. Prods. Liab. Litig.*, 496 B.R. 256, 271 (D. Mass. 2013).

"requires a trauma or bodily injury or psychiatric impairment beyond mere shame or humiliation," *id.*; *accord In re Residential Capital, LLC*, 536 B.R. 566, 571-72 (Bankr. S.D.N.Y. 2015)—because, *inter alia*, each Plaintiff claims to have suffered not only "severe ... emotional ... injur[ies]," but also "physical" injury requiring "medical care and attention" as a result of Harvey Weinstein's purported attacks.  (*See* ¶¶ 133-34, 140-41, 147-48, 154-55, 162-63, 169-70, 176-77, 183-84, 191-92, 198-99, 205-06, 212-13, 220-21, 227-28, 234-35, 241-42, 254-55, 266-67, 278-79, 286-87, 290-91, 302-03, 312-13, 318-19; Prayer for Relief ¶ C.)  Thus, courts have found sexual assault claims like those made here to be personal injury torts for purposes of section 157's mandatory abstention exemption.  *See, e.g.*, *In re Manidis*, Adv. No. 93-0181, 1994 WL 250072, at *5-6 (Bankr. E.D. Pa. May 27, 1994) (sexual assault claim against debtor could not be subject to mandatory abstention); *see also Allen v. Allen*, 275 F.3d 1160, 1162 (9th Cir. 2002) (plaintiff was "authorized to pursue her personal injury tort claims," which stemmed from her husband's physical attack against her, in federal court due to filing of bankruptcy petition).[11]

*Second*, although the statutory language refers to "claims against the estate," courts in this Circuit and elsewhere have held that the "personal injury tort" exemption in section 157 does not bar only claims against the debtor.  Rather, the statute applies to claims against non-debtor third parties, as well, under the kinds of circumstances present in this case—namely, where the debtor has agreed to indemnify the third party.  *See, e.g., In re N. England*, 496 B.R. at 271-72 (mandatory abstention exemption applied to claims against debtor's individual officers and directors); *Abbatiello v. Monsanto Co.*, No. 06 Civ. 266(KMW), 2007 WL 747804, at *3 (S.D.N.Y. Mar. 8, 2007); *Lalima v. Johnson & Johnson*, No. 1:19-CV-0464 (GTS/TWD), 2019

---

[11] Indeed, even lesser forms of sexual misconduct and less severe physical altercations have been held to constitute personal injury torts for purposes of bankruptcy jurisdiction.  *See, e.g., In re Ice Cream Liquidation, Inc.*, 281 B.R. 154, 162 (Bankr. D. Conn. 2002) (sexual harassment claims); *In re Schacter*, Adv. No. 05-9404, 2007 WL2238293, at *1-3, *6-7 (Bankr. S.D.N.Y. Aug. 1, 2007) (claim predicated on defendants' dog's attack of plaintiff).

WL 2362362, at *8 & n.10 (N.D.N.Y. May 24, 2019); *see also Dieterly v. Boy Scouts of Am.*,

Civ. A. No. 20-902, 2020 WL 3447766, at *3 n.2 (E.D. Pa. June 24, 2020) (in sexual abuse case

against debtor as well as individual troop leaders and affiliated entities, which was removed on

"related to" jurisdiction grounds, "[t]he Plaintiff concede[d] that the doctrine of mandatory

abstention ... [wa]s not applicable ... since this is a 'non-core' personal injury action.").

     Accordingly, contrary to Plaintiffs' contention, this action is not subject to mandatory

abstention, and the Court need not engage in that analysis here.

## III. PERMISSIVE ABSTENTION AND EQUITABLE REMAND ARE NOT WARRANTED IN THIS CASE.

     Plaintiffs alternatively urge the Court to abstain from exercising its jurisdiction under the

doctrines of permissive abstention and equitable remand. (Pl. Br. 11-13.) However, because the

relevant equitable factors overwhelmingly support this Court's exercise of jurisdiction, the Court

should decline Plaintiffs' invitation.

     Although a court may permissibly abstain from adjudicating an action over which it has

"related to" jurisdiction under 28 U.S.C. § 1334(c)(1) "in the interest of justice, or in the interest

of comity with State courts or respect for State law," or may equitably remand claims "on any

equitable ground" under 28 U.S.C. § 1452(b), courts must be "sparing" in their use of these

doctrines. *Winstar Hldgs., LLC v. Blackstone Grp. L.P.*, No. 07 Civ. 4634(GEL), 2007 WL

4323003, at *5 (S.D.N.Y. Dec. 10, 2007).[12]   Accordingly, courts may remand a case under these

doctrines "only for a few 'extraordinary and narrow exception[s],'" as they have a "'virtually

unflagging obligation … to exercise the jurisdiction given them.'"  *In re WorldCom*, 293 B.R. at

332 (citations omitted).  Moreover, the burden is on a plaintiff to establish that permissive

---

[12] As Plaintiffs note, the permissive abstention and equitable remand inquiries are effectively identical and typically analyzed together.  (Pl. Br. 11-12 (citing *Little Rest Twelve, Inc. v. Visan*, 458 B.R. 44, 60 (S.D.N.Y. 2011)).)

abstention or equitable remand is appropriate in a given case. *KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.*, 600 B.R. 214, 233 (S.D.N.Y. 2019).

In denying the plaintiff's motion to remand in *Canosa*, Judge Engelmayer outlined the factors that courts in this Circuit consider in conducting the equitable remand analysis—specifically:

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

*Canosa*, 2018 WL 3642631, at *6 (citation omitted) (finding that the balance of these factors "overwhelmingly" supported the federal court's exercise of jurisdiction). Here, as in *Canosa*, the balance of these factors strongly tips in favor of this action staying in this Court.

**A.    The Effect on the Efficient Administration of the Bankruptcy Estate Strongly Supports Retention.**

The effect that remand will have on TWC's chapter 11 proceeding is "one of the most important" factors to be considered. *In re River Ctr. Hldgs., LLC*, 288 B.R. 59, 69-70 (Bankr. S.D.N.Y. 2003) (denying motion for equitable remand); *see also In re Adelphia Commc'ns Corp.*, 285 B.R. 127, 144 (Bankr. S.D.N.Y. 2002) (same). Here, given that four other cases arising out of Harvey Weinstein's alleged sexual misconduct are all pending in this District, this factor overwhelmingly favors retention. Litigating this action in this Court will, for example, allow for the efficient coordination of discovery, deter inconsistent rulings, and, accordingly, conserve the limited resources available for distribution to TWC's creditors.

These are among the reasons cited by Judge Engelmayer in *Canosa*, where he found that the "[m]ost important [factor] … is the concern for efficient administration of the bankruptcy estate," which would be "clearly advanced" by keeping the action in federal court. *Canosa*, 2018

20

WL 3642631, at *6.  In so holding, Judge Engelmayer recognized that *Canosa* was not formally related to the parallel actions, but nevertheless concluded that actions were still "clearly 'related' in the practical sense, insofar as those that reach discovery will almost certainly implicate common incidents, issues, witnesses, and records."  *Id.*  For the same reasons described previously (*see supra* §§ I(A), (B)), the same is true here.

Thus, by exercising its discretion to accept jurisdiction, this Court will minimize the risk of duplicative discovery and motion practice, thus preserving TWC's limited resources for distribution to TWC's creditors—including women who successfully bring claims against Harvey Weinstein for sexual misconduct.  By contrast,

> if this Court were to … remand the litigation originally filed in state court, motion practice and discovery would proceed separately in [at least two] jurisdictions.  The litigation that would ensue in the various fora would be entirely duplicative and wasteful.  It would eat into the funds available to pay the alleged victims identified in this litigation.  As deep as some of the pockets in this action may be, they are in all likelihood not limitless.  A remand would encourage a race for assets, a race that may deprive many victims of the alleged fraud of their fair share of any recovery.

*Canosa*, WL 3642631, at *7 (quoting *In re WorldCom*, 293 B.R. at 333-34).  That is particularly true here, given that the *Canosa*, *Geiss*, *David*, and *Noble* actions already pending in this District involve varying degrees of overlapping defendants, legal issues, and discovery with this action.

As Judge Engelmayer concluded in *Canosa*:

> Litigating these claims in this District, rather than in state court, enhances the possibility that the cost of litigation will be limited, to a degree, by opportunities for coordination across cases pending in a common district.  Such coordination may, for example, result in singular, rather than multiple, depositions being taken of parties and third-party witnesses relevant to multiple actions.  Harnessing these efficiencies limits the potential drain on the bankruptcy estate.  Thus, it is "beyond cavil that judicial economy and efficiency are best served by exercising the jurisdiction that so clearly exists."

*Id.* (quoting *In re WorldCom*, 293 B.R. at 333).[13]  Those findings are equally applicable

---

[13] In addition, to streamline the type of TWC-related discovery that this action would likely entail, TWC has granted the plaintiffs in certain of these federal actions access to a database of approximately eight million documents for

here and compel retention of this action in federal court.

**B.      The Balance of the Remaining Factors Also Support Retention.**

Each of the remaining factors either supports retention or is neutral and, accordingly, do

not support this Court declining to adjudicate this action.

The next two considerations—which focus on the extent to which state law issues

predominate and the complexity or unsettled nature of that state law—are only a "modest factor"

in the analysis. *In re Adelphia*, 285 B.R. at 146. Although Plaintiffs argue that permissive

abstention is appropriate here because they assert purely state law claims (Pl. Br. 12-13), there

"is no material difference … in the ability of the state and federal courts to decide" claims arising

under state law, *In re Adelphia*, 285 B.R. at 146.; *see also In re River Ctr.*, 288 B.R. at 70 (noting

that federal judges are "constantly enmeshed in state-law issues" and "[t]he fact that a complaint

is based on state law causes of action does not mandate equitable abstention or remand").

Nevertheless, Plaintiffs claim that these factors warrant equitable remand because one of

them, Jane Doe II, invokes New York's Child Victims Act ("CVA"), CPLR 214-g, which has yet

to be interpreted by any state court of appeals. (Pl. Br. 13.) But the CVA relates only to the

timeliness of one of the Plaintiffs' claims—all of which are, substantively speaking, garden

variety state-law claims. As Judge Engelmayer found, "[c]ourts in this District are well familiar

with New York law in the areas relevant to the claims in this case," *Canosa*, 2018 WL 3642631,

at *7, especially since there has already been substantial motion practice by the parties in

*Canosa*, *David*, and *Geiss* concerning the validity of Plaintiffs' very claims and theories, which

---

purposes of discovery. *See David*, ECF  No. 227 (filed May 13, 2020); *Canosa*, ECF No. 165 (filed May 7, 2019).
Coordination in this respect would likewise benefit TWC, as well as the named parties, with respect to this action.

were predicated on substantially similar allegations, *see id.* at *1, *5; *David*, 2019 WL 1864073, at *6-7; *David*, 431 F. Supp. 3d at 305-10; *Geiss*, 383 F. Supp. 3d 171-75.[14]

Next, Mr. Weinstein removed this action before *any* Defendant even had responded to the Complaint. Accordingly, the State Court has "invested little to no time in this case," *Kirschner ex rel. Refco Private Actions Tr. v. Bennett*, No. 07 Civ. 8165 GEL, 2008 WL 1990669, at *8 (S.D.N.Y. May 7, 2008), so "[t]here is ... little concern that a state court's efforts will have been wasted by removal to this Court," *Canosa*, 2018 WL 3642631, at *8.

Similarly, for all of the reasons set forth above, this action is closely related to the Bankruptcy Case—which is yet another factor favoring this Court's retention of jurisdiction. Just as Judge Engelmayer found in *Canosa*, Plaintiffs' claims against Mr. Weinstein "directly implicate" the Bankruptcy Case because of his indemnification and insurance claims. *Id.* For those same reasons, Plaintiffs' assertion that this action is "far removed" from TWC's Bankruptcy Case because "all of the[ir] claims against Mr. Weinstein predated the creation of TWC," and thus is subject to remand like the *Sokola* case (Pl. Br. 13), is meritless.

Finally, neither of the final two factors support equitable remand. Because jury trials are available as a matter of right in federal district court—just like in the State Court—this factor does not counsel in favor of remand. *See Sokola*, 2020 WL 3605578, at *17 n.12. Similarly, Plaintiff has identified no prejudice to any non-removing Defendant. In any event, consent to

---

[14] In an attempt to deflect from their own forum-shopping, Plaintiffs claim Mr. Weinstein's motivation in removing was a "blatant attempt[] to forum shop" seeing as how this "case involv[es] only state law claims." (Pl. Br. 13.) It is not surprising that Plaintiffs offer no support for their bald accusation, as courts in this Circuit frequently exercise "related to" jurisdiction over cases involving only state law causes of action. *See Glick v. Creative Grp., LLC*, No. 13 Civ. 6549 (AT), 2014 WL 12638081, at *1 (S.D.N.Y. Apr. 21, 2014) ("[A]ctions based entirely in state law are often found to be properly removed to federal court if they could conceivably affect the debtor's estate.") (collecting cases); *see also, e.g.*, *SPV Osus*, 882 F.3d at 345 ("related to" jurisdiction existed over suit asserting only state law tort claims). In fact, Plaintiffs' argument cannot be squared with the successful removals of the complaints in *Canosa* and *David*, which also exclusively alleged state-law claims. *See Canosa*, 2018 WL 3642631, at *2; *David*, 2019 WL 1864073, at *6-7.

removal by the other Defendants is not required under § 1452(a), and no Defendant has objected to removal.  (Not. Rem. ¶ 29.)

## IV.   MR. WEINSTEIN'S REMOVAL WAS OBJECTIVELY REASONABLE, PRECLUDING AN AWARD OF COSTS.

Finally, Plaintiffs tack onto the end of their brief a cursory request for this Court to award them attorneys' fees and costs in connection with Mr. Weinstein's removal of this action.  (Pl. Br. 13-15.)  For all of the reasons set forth above, the Court should deny Plaintiffs' motion, which would render moot their request for fees.  But even if the Court decides to remand this action, Mr. Weinstein plainly had more than a colorable basis for removal.  As a result, an award of fees here would be contrary to controlling law.

"Absent unusual circumstances," a court may award attorneys' fees under 28 U.S.C. § 1447(c) "*only* where the removing party lacked an objectively reasonable basis for seeking removal."  *Sokola*, 2020 WL 3605578, at *18 (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)) (emphasis added); *see also Qatar v. First Abu Dhabi Bank PJSC*, No. 19-CV-5567 (AJN), 2020 WL 206661, at *13 (S.D.N.Y. Jan. 14, 2020) (request for fees should be denied where defendant had "at least a colorable basis for removal and there is no evidence that removal was merely an attempt to abuse or harass the plaintiff or to force it to incur unnecessary expenses") (quotations omitted); *Little Rest Twelve, Inc. v. Visan*, 829 F. Supp. 2d 242, 245 (S.D.N.Y. 2011) ("If a defendant's grounds for removal are not clearly barred by established federal law, then an award of attorney's fees and costs is improper."); *Allstate*, 2011 WL 4965150, at *8 ("if lack of jurisdiction was not obvious from the face of the removal petition and

24

no other unusual circumstances obtain, a court cannot conclude that an objectively reasonable basis was lacking") (quotations omitted).[15]

In support of their argument for fees, Plaintiffs principally re-assert their contention that this case is analogous to *Sokola*, and thus that Mr. Weinstein's removal of this action the week after Judge Liman granted Sokola's motion to remand was "frivolous" and in "bad faith."  (Pl. Br. 13, 15; *see also id.* at 14 (calling the removal a "waste of time and resources" coming on the heels of Judge Liman's ruling in *Sokola*).)  But as detailed above, Plaintiffs' efforts to compare the instant action to *Sokola* completely miss the mark, and rely on wholesale mischaracterizations of the allegations and theories set forth in their own Complaint.  Their argument therefore does not come close to satisfying the above standard so as to warrant a fee award.  Accordingly, regardless of whether the Court remands this action, an award of attorneys' fees under § 1447(c) would be inappropriate.

## CONCLUSION

For all of the foregoing reasons, the Court should deny (i) Plaintiffs' Motion to Remand, and (ii) their request under 28 U.S.C. § 1447(c) for an award of attorneys' fees and costs.

---

[15] Notably, Plaintiffs' brief fails to acknowledge that the Supreme Court in *Martin* affirmed the lower court's *denial* of the fee request under § 1447(c) because, like here, the defendant had an objectively reasonable basis to remove. The other cases Plaintiffs cite in support of their fee request are similarly inapposite.  For example, in *CMGRP, Inc. v. Agency for the Performing Arts*, 689 F. App'x 40, 41-42 (2d Cir. 2017), the defendant removed on the basis of purported diversity jurisdiction, arguing that the plaintiff had fraudulently joined an improper party to eliminate diversity, *id.*—and the District Court found that, given the complaint's allegations, the defendant had no objectively reasonable basis to assert that the plaintiff "could not possibly" have adequately alleged a breach of contract claim against the purported improper party.  And in *Cardona v. Mohabir*, No. 14 Civ. 1596(PKC), 2014 WL 1804793, at *1, *4-5 (S.D.N.Y. May 6, 2014), the Court imposed sanctions on an attorney who "concede[d] that, at the time of filing the notice of removal, he knew he was removing the case to the wrong district," and "state[d] that he did so because he lacked time to secure to *pro haec* [*sic*] *vice* admission to the proper district, the District of Connecticut, and did not want his client to lose the benefit of having the case heard in federal court").

Dated: New York, New York
     August 27, 2020

**SCHULTE ROTH & ZABEL LLP**

By:   /s/ Gary Stein
      Gary Stein
      Brian T. Kohn
      Abigail F. Coster

      919 Third Avenue
      New York, NY 10022
      Telephone: (212) 756-2000
      Facsimile: (212) 593-5955
      E-mail: gary.stein@srz.com
             brian.kohn@srz.com
             abigail.coster@srz.com

*Attorneys for Defendant Robert Weinstein*